## MATTHEW SHAW v. JULIA MASON.

1. EVIDENCE; *Secondary; Diligence.* Secondary evidence of the contents of a written instrument is inadmissible until it appears that reasonable efforts have been made to obtain the original and have failed.

2. WRITTEN INSTRUMENTS; *Beyond the State.* The mere fact that the instrument is shown to be in the possession of a party then outside the state is not of itself sufficient to sustain parol proof of the contents.

3. ERROR; *Practice.* Plaintiff brought suit to recover for building a house and to foreclose a mechanic's lien. On the trial he introduced illegal evidence over the objection of defendant. Upon that illegal testimony the court gave him a personal judgment, but refused a foreclosure. To the admission of such illegal evidence defendant duly excepted. As against a proceeding in error by the plaintiff to reverse the judgment, the defendant can defend by showing that upon the legal evidence plaintiff was entitled to no relief whatever.

*Error from Douglas District Court.*

THE opinion contains a sufficient statement of all the facts upon the questions decided. The case below was tried at the February Term 1872. A personal judgment was rendered in favor of plaintiff *Shaw* for $502.97, and costs. Plaintiff moved for a further judgment or decree foreclosing a mechanic's lien for said sum, and also for an order continuing his attachment-lien, and for the sale of the attached property, to satisfy said personal judgment. The district court denied these motions, and the plaintiff brings the case here on error.

*B. J. Horton,* and *Thacher & Stephens,* for plaintiff:

1. Did the court err in holding that the attachment was not a lien upon the building, and in refusing to make an order for its sale? No motion was made to discharge the

attachment, and the only objection made to the sale under the attachment was that the building was exempt as a homestead. Sec. 193 of the code provides that all the real and personal property of the defendant, not exempt by law, shall be subject to attachment, and § 443 provides that lands, tenements, goods and chattels, not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution. The constitution, art. 15, § 9, and the statute in regard to homesteads provide that *no property* shall be exempt as against claims and obligations contracted for the erection of improvements thereon. The plaintiffs claim for materials and labor in building the house which was attached. A homestead then, being subject to sale for the payment of a claim like the claim in this action, is, in an action like the present, subject to sale under an attachment under said § 193 of the code. An order of attachment may issue in an action on an account to foreclose a mechanic's lien, (*Gillespie v. Lovell*, 7 Kas., 419,) and may be levied on the property on which the mechanic's lien has been taken. And see *Jackson v. Hull*, 10 Johnson, 480, a case under a mortgage, but analagous in principle to the present case.

2. The plaintiff could not be divested of his mechanic's lien by the removal of the building by the defendant. The mechanic's lien law provides that any one, who under a contract with the owner of any tract of land, shall erect a building on such land, shall have a lien upon the whole piece or tract of land, *the buildings* and appurtenances. The legislature evidently intended by the use of the words "the buildings," that the lien should extend not only to the land and appurtenances, or the tenant's interest therein, but also to the buildings themselves as such. Otherwise they would have simply used the word land, or land and appurtenances.

3. But it may be claimed that it was error in the court to admit the parol testimony in regard to the work and labor, and therefore there is no error in the judgment as to the mechanic's lien. This action is upon an account, and is in the nature of a general assumpsit for work and for labor done.

13—10 KAS.

Where a contract has been wholly executed on the part of plaintiff, and the time of payment on the other side is wholly passed, the plaintiff may bring his action on his account for work, labor and materials. (2 Smith's L. Cases, 41.) In such case the special contract is to *no extent* the ground of the plaintiff's recovery, and the defendant is not allowed to defeat the plaintiff's action by setting up a special contract which he himself has broken. Houck on Liens, p. 66, § 48.

In any event, the non-production of the contract was sufficiently accounted for. (1 Greenl. Ev., § 558; 3 B. Mon., 532.) The personal judgment cannot be inquired into; there have been no exceptions taken to it; the plaintiff does not seek to reverse it, and until an application is made by the defendant, in a proper way, to reverse it, it must stand; and so long as it stands, it is conclusive as to all the facts necessary to sustain it.

The exception to this testimony was not reduced to writing during the term, and now improperly appears for the first time in a case made by the plaintiff. 10 Ohio St., 223.

*John Hutchings*, for defendant in error:

1. There was no evidence in the case in the court below which authorized the plaintiff's recovery at all; and hence he cannot complain of the judgment in his favor as it was rendered. The contract under which the work was performed, and the materials were furnished, for which the plaintiff claimed a lien, was in writing, and the writing itself was the only evidence upon which his claim could be established, unless the loss or destruction of the writing was sufficiently shown to admit secondary evidence of its contents. Its loss was not shown, nor was any sufficient proof given to let in secondary evidence. 1 Greenl. Ev., § 558, note 3. But if the loss of the written contract had been sufficiently shown, there was not one word of evidence given of its contents. Shaw's testimony was taken under the objection of defendant, and if he had given the contents or substance of the writing in response to the question asked him, his evidence would have

been incompetent and might have been and might now be disregarded by the court. Testimony that is incompetent proves nothing. But the contract was not proven. Shaw did not state one word that it contained, or even that he knew what it contained, or that he had ever read it. Where a party seeks to give secondary evidence of a lost contract he must give clear and direct evidence of its contents. It is not enough to state generally what the contract was. 1 Greenl. Ev., § 558, note 1; 28 Barb., 543; 1 Peters, 591; 3 Comst., 424.

2. The plaintiff was not entitled to a mechanic's lien on the building in question. The petition alleges and the evidence shows that the contract for the building of the house was made with a *tenant* and not with the *owner* of the premises. There was nothing before the court to show that as between herself and the lessor the tenant had any right to remove the building at or before the expiration of the lease; and the legal presumption was that the building was a part of the real estate and the tenant had no right to remove it. If so then the defendant had no interest in the building upon which a lien could operate. Laws 1870, ch. 87, § 22, amending § 631 of the code; 19 N. Y., 234.

The statement of lien which plaintiff filed only claimed a lien on the "lot." If plaintiff had been entitled to a lien on the building separate from the lot he should have claimed it. The statute requires the statement to contain "a description of the property subject to the lien." Laws 1870, page 178, ch. 87, § 24. No such description of the building was set forth in the statement, and the tenant had removed the building off the lot.

3. There was no error in the judgment of the court in relation to the attachment. The return of the sheriff on the order of attachment shows that he went onto lot 47 New York street, and declared that he attached the house thereon as personal property. No attachment was levied on the lot. He found the defendant in possession, and he did not attempt to get possession, and hence there was no levy, if it was per-

sonal property.. But the return and evidence both show that the house was on lot 47 when the levy was attempted, and the defendant with her family was living in it. There was no proof that the house sustained such a relation to the lot as to be personal property. There was no evidence to show that the house pretended to be attached was the same one built on lot 48, and moved there. For aught that appears it was erected where it was found.

The opinion of the court was delivered by

BREWER, J.: Plaintiff brought suit in the district court alleging that he had built a house for defendant under a written contract, and seeking to foreclose a mechanic's lien. He also caused an attachment to be issued and levied. The district court gave him a personal judgment for the balance due on the contract, but refused the foreclosure, or to grant an order of sale of the property attached. Of this he complains, and by proper motions brings the questions here. At the outset we are met by the objection of the defendant that the plaintiff ought not to have had any judgment, and therefore was not wronged by failing to obtain all he claimed. The petition alleged a contract in writing, and that it was in the possession of the defendant. This the answer denied. Upon the trial, the plaintiff testified that he made a contract in writing and that the contract was left with General Deitzler; that he had asked Deitzler for it, but did not get it. General Deitzler then testified that he did not have the contract; that it was not given to him, but to his wife, who kept it in her trunk with her jewelry, and that she was then at or near Lexington, Mo. Upon this the plaintiff was asked to state what the contract was between him and the defendant. This was objected to on the ground that the writing was the best evidence, but the objection was overruled and parol testimony admitted of the agreement between the parties. Was this error? "It is a well-settled principle of law, governing the introduction of testimony, that secondary evidence of the contents of written instruments is not admissible when the

originals are within the control or custody of the party, or when they are within his reach, and may be obtained with reasonable effort on his part." *Guthrie v. Merrill*, 4 Kas., 192. It is hardly necessary to recite authority upon a proposition so elemental, and resting upon such clear reason. If authority were needed, text-books and reports would furnish ample. Now, the testimony fails to show that plaintiff had not himself the contract at the time he was giving parol testimony of its contents. For aught to the contrary in the record plaintiff may have applied to and received it from Mrs. Deitzler. He nowhere says that he has not got it, or that he is ignorant of its whereabouts. We may infer from the entire testimony that the contract was probably with Mrs. Deitzler, in Missouri; but this is by no means certain. And if it were, has the plaintiff shown such reasonable effort to obtain it, as will justify secondary evidence of its contents? It does not appear that he made any effort to obtain it from Mrs. Deitzler. He made no application to her, caused no subpœna to be issued for her, made no attempt to take her deposition. There is some conflict between the authorities as to how far a party may rely upon absence from the state of a written instrument as a basis for secondary evidence of its contents. It has been likened to the absence of a subscribing witness, and in the following cases the question has been more or less fully considered: *Townsend v. Atwater*, 5 Day, 306; *May's Adm'r v. May*, 1 Porter (Ala.,) 229; *Lewis v. Beatty*, 8 Martin, U. S., 287; *Harrell v. Ward*, 2 Sneed (Tenn.,) 610; *Shepard v. Giddings*, 22 Conn., 282; *Brown v. Wood*, 19 Mo., 475; *Eaton v. Campbell*, 7 Pick., 10; *Boone v. Dyke's Legatees*, 3 T. B. Mon., 530; *Bailey v. Johnson*, 9 Cow., 114. While a contract is in a foreign state its production cannot be compelled. But the question as to how it happens to be in that state may become material. Was it placed there through the instrumentality of the party seeking to introduce the secondary evidence? Is it permanently or only temporarily there? Has the custodian been applied to for the instrument, or if applied to refused to deliver? In *Shep-*

*ard v. Giddings,* above cited, the custodian resided in a foreign state, and refused to deliver the instrument but attached a copy to his deposition. The copy was held to be admissible, as this was the best evidence it was in the power of the party to produce. In *Harrell v. Ward* two subscribing witnesses were shown to be "now absent from the state." Secondary evidence was held inadmissible, it not appearing why they were absent, or whether they were absent permanently or temporarily. In this case the record is silent upon all the questions suggested. For aught that appears the custodian may have left the state the day before the trial, at the instance of the plaintiff, to avoid the production of the contract, and intending to return on the day succeeding. We may not go outside the record, and appeal to our personal knowledge of the parties or witnesses, but must decide the case simply upon the record, and upon that we are constrained to say there was not such proof of diligence on the part of plaintiff as justified the admission of secondary evidence of the terms of the contract.

But it is contended by plaintiff that the exception to the introduction of this secondary evidence was not reduced to writing until after the close of the term, and now improperly appears in a case made by the plaintiff. It is true the case was made by the plaintiff. But it has been decided by this court that "if the bill of exceptions or case made, as presented to the district court by the party aggrieved, does not state all the facts, and the exceptions of both parties on the point presented, it is the right of the other party to have such facts or exceptions inserted before the bill of exceptions or case made is signed." *Glass Co. v. Ludlum,* 8 Kas., 40. Granting time to plaintiff beyond the term to make a case, does not destroy the right of defendant to have all the facts and all the exceptions preserved. Perhaps if the term had closed when the case was signed she may not avail herself of that exception in the plaintiff's case to obtain a reversal of the judgment. She may perhaps be debarred from any affirmative relief, but nevertheless may avail herself of the exception as a protection

against further wrong. Again, it is contended that the personal judgment cannot be inquired into. "There have been no exceptions taken to it; the plaintiff does not seek to reverse it; and until an application is made by the defendant, in a proper way, to reverse it, it must stand; and so long as it stands, it is conclusive as to all the facts necessary to sustain it." We do not think the conclusion follows, which plaintiff desires. Of course, the personal judgment ˙stands till the defendant obtains a reversal. If the judgment had been rendered against her without any testimony, it would nevertheless be a valid judgment till she moved ·to set it aside. A judgment is erroneously rendered against her for part of the plaintiff's claim. She waives the error, content to let the judgment for that portion of the claim stand. Plaintiff now asks us to reverse the rightful ruling of the district court in favor of the defendant, because the defendant has not asked us to disturb a wrongful ruling against her. If the defendant is content to let the matter stand, the plaintiff ought to be. He has gotten more than under the evidence he was entitled to, and cannot fairly make the sufferance of the defendant the basis of a still larger claim. The judgment of the district court must be affirmed.

All the Justices concurring.