No. 23,660.

THE STATE OF KANSAS, *Appellee*, V. FRED W. POLLMAN, *Appellant.*

### SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Forgery—Written Confession of Guilt.* On the trial of the president of a bank charged with the crime of forgery, *held,* upon the facts stated, it was not error to admit in evidence against him a written confession of guilt signed by him, there being no evidence to substantiate the claim that the statement was obtained by promises of immunity or other inducements.

2. SAME—*Errors Assigned Not Reviewable.* Errors occurring at the trial but not urged as grounds for the motion asking a new trial will not be considered on appeal.

3. SAME—*Forgery — Instruction — Intent to Injure or Defraud.* In a criminal prosecution on the charge of forgery in the third degree, an instruction is held not improper which charged that it was not necessary for the state to establish that the primary purpose of defendant was to injure or defraud and that his real purpose may have been to benefit himself.

4. SAME—*Secondary Evidence of Contents of Forged Instruments When Admissible.* In such a case secondary evidence of the contents of the forged instruments is admissible where the state has accounted for the failure to produce the originals by showing that they were turned over to the defendant, who gave them to his brother, and that his brother took them outside of the state.

Appeal from Linn district court; JABEZ O. RANKIN, judge *pro tem.* Opinion filed November 12, 1921. Affirmed.

*John H. Crain,* and *A. M. Keene,* both of Fort Scott, for the appellant.

*Richard J. Hopkins,* attorney-general, and *John O. Morse,* county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant was charged on four different counts with forgery in the third degree. He was found guilty on the first count, and appeals.

The appellant was president of the Linn County Bank and owned more than 150 shares of the stock, his brothers and a sister owning the rest except a few shares held by outside parties. The appellant was born and raised in Linn county and from the age of seventeen had been connected with the bank, filling all the positions from bookkeeper and janitor to president. Besides his interest in the bank, he owned several farms and considerable personal property in Linn county, and a large tract of land in Texas. In the community where he lived he was regarded as a law-abiding citizen.

It is not seriously argued and cannot be contended that the defendant was not guilty as charged in the information. His complaint is that by reason of certain errors he was prevented from having a fair trial. The main contention is that the court erroneously admitted in evidence a written confession of his guilt which he had signed; that the statement was obtained by promises of immunity and other inducements held out to him by E. V. Wood, a deputy bank commissioner who discovered the forgeries.

The first count of the information charged the appellant with forging the name of W. W. Calvin to a note for $5,000 which he carried as one of the assets of the bank. Wood testified that among other notes listed in the individual ledger and which he found in the notebook handed to him by the appellant were three notes purporting to be signed by Calvin, and on being questioned, appellant told him that Calvin had signed them. Wood accepted his word at the time but went further into the examination and found the same situation in respect to other notes. The next morning he told Pollman to call the directors for a meeting at the bank. Pollman said, "Come in the back room a minute, Wood, I want to speak to you." They

went into the bookkeeper's room and after the door had been closed their conversation in substance was:

" 'There is no use going any farther, Wood, you have got it on me on those notes,' and I said, 'Do you mean then that you signed all these then yourself,' and he said, 'Yes.' I said, 'Where did the money go?' and he swore, and said it went into those farms, and told me he had a lot of property, enumerating a good share of it, and he wanted a chance to clean it up without his family or the directors finding it out. He asked to be given permission not to call the directors. I said I had no arrangements or any authority to say that he could take up these notes, but I would do this, we could agree between us that he would sign this statement covering the situation and that we would not call the directors that day or until we had time to go to Topeka, and I would go with him and we would lay the whole matter before the bank commissioner, and he said he would like to do that. I asked him, 'Is this all of the notes,' and he said, 'I will go through the case and pick them all out for you, for there are others.' After he had picked out these notes and said they were the ones he had signed the names to I placed them with the others, and took the typewriter and made the statement which he signed."

After completing the examination of another bank in that vicinity, the witness met Pollman by previous arrangement at the depot, and they went together to Topeka.

The paper marked, "Voluntary Statement," signed by the appellant, read as follows:

"I, F. W. Pollman, president of the Linn County Bank, of La Cygne, in the interest of perfect candor, do hereby make the following statement:

"That I have placed in the assets of the Linn County Bank, and carried the same as genuine notes, the following which I have falsely signed in the names of other individuals, and purporting to be the notes and obligations of these others, as follows:"

Then followed a list of thirteen notes aggregating over $30,000.

The appellant was a witness and his testimony shows that there is no merit in the contention that any advantage was taken of him in procuring the written confession. He testified in substance:

"I told Mr. Wood that the W. W. Calvin note was his. The next morning I saw him comparing the signatures of those notes with the signatures on the canceled checks. I don't know what notes and canceled checks they were, and afterwards he asked me to call the board in for a meeting, at about 11 o'clock. .I suppose I was satisfied then that that was the reason he was asking me to call the directors, and when I reached that conclusion I took him in the back room. I said in substance to him: 'There is no use going any further Mr. Wood, I signed the notes.' He

hadn't then made me any promises of any kind, and in carrying out this statement I made and set it out fully on the sheet. I told him that I didn't know whether all the notes that he had in his hand were all the notes that I had signed. I told him I would look through the note file and see. I looked through the note file and found some additional notes, on which I had written the names. I think they were included with the ones he had already picked out and listed in the statement. I told him what I had done with the money, and I think I told him I spent it on farming operations and putting out a 600-acre wheat crop and harvesting two crops that I hadn't been able to harvest. In a way I had taken the money out of the bank for my own private use, and put these notes on which I had signed the name of W. W. Calvin and E. L. Calvin in the bank in the place of the money I had taken out."

The appellant's testimony to the effect that before inducements of any character were made to him he took the bank examiner aside and confessed to substantially the same things that are contained in the statement makes it plain that there could have been no prejudice in the admission of the written confession. There was nothing improper in the bank examiner's agreement to do as he subsequently did, go to Topeka with the appellant and lay the matter before the bank commissioner. He had no authority to promise any immunity and there is no claim that he made such promises.

It is next contended that appellant was entitled to a new trial because of misconduct of the county attorney. The record shows the following: When the state was about to close its testimony the county attorney said: "I would like to have him [meaning appellant] sworn to answer one question." Appellant's counsel objected on the ground that it was prejudicial and contrary to law. Thereupon the county attorney withdrew the request. The state then rested and the first witness called for the defense was the appellant, who testified at considerable length. The matter was not of sufficient importance to furnish the basis for a serious claim of error; besides, it was not urged as a ground for the motion asking a new trial, For that reason it cannot be considered. (*The State v. Brower*, 75 Kan. 823, 88 Pac. 884.)

. The appellant had attempted to show by the makers of some of the forged notes that they were on intimate and friendly terms with him; that he had represented them in business; that he had indorsed checks for them in order to give them credit at the bank for money paid there. The evidence of this

character was somewhat prolonged, and the court took occasion to say that the question was whether or not they had given the appellant authority to sign their names to the notes, and that if he had such authority it was a proper matter of inquiry. Counsel for appellant insisted that this authority might be shown indirectly, and the court remarked:

"I am awfully friendly with several bankers but I would be considerably otherwise if they signed my name to a note."

This is urged as another reason why the state should be put to the expense of another trial. There was no objection to the statement of the court at the time it occurred, and besides, we discover nothing prejudicial in what was said.

Complaint is made of instructions, one of which charged that it was not necessary for the state to establish that the primary purpose of the appellant was to injure or defraud, and that his real object may have been to benefit himself. One of the elements of forgery in the third degree is that the act be performed "with intent to defraud." The instruction correctly stated the law and was particularly appropriate to the facts in this case because the appellant had introduced evidence to show that his family restored to the bank the money represented by the forged notes. To constitute forgery in the third degree it is sufficient if an obligation, claim, right or interest shall be or purport to be created or in any manner affected.

The appellant was not prejudiced by the failure to produce the original forged instruments. The state had accounted for the failure to produce these by showing that they were turned over by the bank examiner to the appellant, who gave them to his brother, and that his brother took them outside of the state. The contents of the instruments were fully established by evidence; the fact that they were forgeries was not only admitted by the appellant but shown by the evidence of the alleged makers.

We discover no ground for the claim that appellant was deprived of any of his rights, or that he did not have a fair trial. The judgment is affirmed.