No. 24,824.

THE STATE OF KANSAS, *Appellee,* v. HARRY GORMAN, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Shipping Mortgaged Property Out of State With Intent to Defraud Mortgagee.* Shipping mortgaged property out of the state with the purpose of selling it there amounts to disposing of it in this state within the meaning of the statute making it a public offense to sell or dispose of mortgaged chattels with intent to defraud.

2. SAME—*Offense Punishable in County from Which Such Shipment Was Made.* An offense committed in the manner indicated in the foregoing paragraph is punishable in the county from which such shipment is made, notwithstanding the state line was crossed from another county.

3. SAME—*Conviction—Interpretation of Verdict.* Under the statute making it an offense to sell or dispose of mortgaged chattels with intent to defraud, a verdict finding the defendant guilty of selling and disposing of the property may be upheld where the evidence shows a disposal of the property, whether or not it would have warranted a conviction if the charge had been merely of selling.

4. SAME—*Instruction Refused—Not Error.* In a prosecution for the unlawful disposal of mortgaged chattels by the mortgagor it is not error to refuse to instruct that a mortgage on a stock of merchandise is void if the mortgagor is permitted to make sales without accounting and to replenish the stock.

5. SAME—*No reversible Error in Record.* Various trial rulings in a prosecution for unlawfully disposing of mortgaged chattels are held not to require a reversal.

The State v. Gorman.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed June 9, 1923. Affirmed.

*Frank M. Sheridan,* and *Bernard L. Sheridan,* both of Paola, for the appellant.

*Charles B. Griffith,* attorney-general, *S. J. Shively,* county attorney, *W. L. Joyce, Edward H. Coughlin,* and *R. E. Coughlin,* all of Paola, for the appellee.

The opinion of the court was delivered by

MASON, J.: Harry Gorman appeals from a conviction in Miami county upon a charge of violating the statute making it larceny to "sell or dispose of" mortgaged personal property without the written consent of the mortgagee, and with intent to defraud. (Gen. Stat. 1915, § 6513.)

1. The evidence relied upon by the state tended to show these facts: The defendant was engaged at Paola in buying and selling junk, including iron and other metals, rubber and paper. In February, 1922, he executed to the Citizens State Bank of that place a mortgage for $4,145.56 upon a quantity of metal, including copper wire, brass, zinc and iron. On May 24, 1922, he shipped a part of it with other property by the Missouri Pacific, consigned to himself at Kansas City, Mo., where he sold it a few days later, retaining the proceeds, some $600. He had neither the written nor oral consent of the mortgagee.

By objection to various rulings the defendant raises the most important question in the case—whether a conviction under the statute cited can rightly be had in any case where the mortgagor with intent to defraud ships mortgaged chattels out of the state and sells them there. It is our conclusion that within the meaning of the statute such conduct amounts to a disposal of the goods in this state, and that the offense is punishable in the county from which the shipment is made. The phrase "to dispose of" is one of wide application, but in criminal statutes, especially when associated with "to sell," it has been held to involve a transfer of title or possession or destruction of the property to which it is applied. (11 C. J. 639; *Scott v. State,* 6 Ga. App. 332, in effect quoted from in 18 C. J. 1281.) In the case last cited a statute forbidding a cropper to "sell or otherwise dispose of" a part of a crop without the consent of the landlord was held not to be violated by a removal of the property from one county to another in the same state. In the opinion it was said, however: "It might be that for a cropper to move any part of the

farm products across the state line would be to dispose of it, as that would be a material interference with the landlord's constructive possession, in that it would destroy his right to resort to those remedies which are provided by the laws of this state for the maintenance of his peculiar and superior rights in the property." (p. 334.) The note to the text already referred to also cites a Kentucky case in which a conviction was upheld under a statute making it a misdemeanor for the owner of a crop to "sell or dispose" of it without the written consent of an agent selected to handle it under a pooling contract, the evidence showing that the defendant had shipped his crop to Cincinnati, where it was sold. In the opinion it was said:

"Indeed, the mere removal of the tobacco from Mason county by him without the consent of the selling agents and with the intent on his part to sell it without their consent in violation of the pooling contract, was a disposal of it within the meaning of the statute. The actual sale of the tobacco in Cincinnati was a mere incident or culminating act of the transaction, furnishing conclusive evidence of the fraudulent intent with which he removed the tobacco from Mason county. The act of removal without the consent of the selling agents put it out of their power to grade or sell the tobacco as provided by the pooling contract, and as the removal of it by appellant was with the intent to sell it in violation of the pooling contract, he thereby unlawfully disposed of it, even before the act of sale, within the meaning of the contract; and in so doing subjected himself to the statutory penalty. If appellant removed the tobacco from Mason county with the fraudulent intent to sell it himself without the consent of the selling agents of the pool and then gave it away, threw it into the Ohio river, or burned it, it would have been an unlawful disposal of it within the meaning of the statute." (Collins v. Commonwealth, 141 Ky. 564, 568.)

South Carolina has a statute reading:

"Any person or persons who shall sell or dispose of any personal property on which any mortgage or other lien exists, without the written consent of the mortgagee or lienee, or the owner or holder of such mortgage or lien, and shall fail to pay the debt secured by the same within ten days after such sale or disposal, or shall fail in such time to deposit the amount of the said debt with the clerk of the court of common pleas for the county in which the mortgage or lien debtor resides, shall be deemed guilty of a misdemeanor." (Crim. Code, 1912, § 447.)

Under that act convictions have repeatedly been upheld where the mortgagee sold the property outside of the state. In the leading case it was said:

"The mere fact that the property in question was carried by the defendant out of the state, and sold and disposed of in the state of Georgia, would not necessarily show that the offense was committed beyond the jurisdiction of

this state. The statute forbids not only the sale but also the disposal of property covered by a lien; and, therefore, while a sale in the state of Georgia would not constitute an offense of which the court of this state could take jurisdiction, yet the carrying of such property beyond the limits of the state, might or might not, according to circumstances, constitute such a disposition of the property as would render one amenable to the provisions of the statute. For example, if a citizen of this state simply rides or drives a horse, covered by a mortgage, across the state line, that, of itself, would certainly not subject him to the penalties of the statute, but if he takes such horse out of the state for the purpose of putting the animal beyond the reach of the mortgagee, then clearly he would be liable to indictment under the statute; and possibly, if without any such purpose, the effect of his taking the mortgaged property beyond the jurisdiction, should prove a defeat of the lien, he might still be liable." (*State v. Rice,* 43 S. C. 200, 203.)

In a later case the court added:

"We think that removal of property from the jurisdiction of the state with the purpose or necessary effect of defeating the mortgage lien, is such a disposal of property as falls within the meaning of the statute. If intention to defeat the lien is essential, one must be presumed to intend the necessary consequences of his voluntary acts." (*State v. Haynes,* 74 S. C. 450, 456.)

In *The State v. Perkins,* 112 Kan. 455, 210 Pac. 1091, the defendant was charged with fraudulently concealing mortgaged property. A discharge was asked on the ground that the evidence was insufficient for a conviction, the point being made that no concealment had been shown. In affirming the denial of the request this court said: "The evidence tended to show that the defendant, after giving the chattel mortgage, left Douglas county, the county of his residence, took the automobile with him, and went to Arizona, where he was known by an assumed name given by him. That evidence was sufficient to justify the jury in concluding that he took the automobile away from Douglas county to conceal it with intent to defraud the mortgagee." (p. 456.) That case is not absolutely parallel to the present one but the analogy is close, the defendant's course in Arizona having been relied upon to characterize his conduct here, and the inference being obvious that he did not physically conceal the car in Douglas county. .

For the mortgagor to take mortgaged chattels out of the state with a purpose to sell them there and keep the proceeds, in our judgment, amounts to a violation of the Kansas statute in that it is a disposal of the property in fraud of the mortgagee's rights, accomplished in this state. The fact of the subsequent sale and retention of the money is important as evidence characterizing the entire transaction, although not essential to a completed offense.

2. Inasmuch as we hold the evidence to have shown the commission of an offense in Kansas we have no doubt of its being punishable in the county from which the shipment was made, although another county was necessarily crossed before reaching the state line. The statute provides that "When a public offense has been committed, partly in one county and partly in another, . . . the jurisdiction is in either county." (Crim. Code, § 23.) In behalf of the defendant it is urged that in order for such a provision to apply one of two conditions must exist: "Either the offense must be divisible, and each part must be unlawful in and of itself, and committed at a different time and place, or it must consist of more than one act, each of which acts, or the effect of each, must constitute an unlawful element of the offense, without the presence of which the offense could not be consummated." (16 C. J. 196.) We discover no difficulty in saying, if necessary, that the defendant's disposal of the mortgaged property by getting it out of the state for sale was accomplished by the act of causing it to be loaded in a car in Miami county, and carried into Johnson county, and by the act of causing it to be carried through Johnson county to the state line, the two acts being essential to the crime. Of a similar situation it has been said: "If it should be conceded that the cotton was removed from the place where produced in Saluda county, with intention to dispose of it in Lexington county, and was sold or disposed of in the latter county, the statute would be violated in either county, for the act of removal is inseparably connected with the disposition, an essential part of it, and within the prohibition of the statute." (*State v. Perry,* 87 S. C. 535, 540.)

3. The defendant was found guilty of selling and disposing of the property. The statute, however, is in the disjunctive, making it an offense to sell or dispose of it. The evidence justified a conviction for disposing of the property, and it is immaterial whether or not it would have warranted a finding of guilty if he had been charged merely with selling it.

4. Complaint is made of the refusal to instruct that a chattel mortgage on a stock of merchandise under which the mortgagor is permitted to sell without accounting for the proceeds and to replenish the stock is void. The defendant was not entitled to such an instruction. A mortgage of the character indicated is void as to creditors (11 C. J. 573), but not as between the parties. (11 C. J. 577.)

5. Complaint is also made of the refusal to give a requested instruction to the effect that the jury, in order to convict, must find that the defendant at the time of making the shipment intended to commit the crime charged. The elements of the offense, including the intention to defraud, having been properly described, the jury were told that before a conviction could be had they must find that it had been committed in Miami county. We do not think a reversal is required by the refusal of the trial court to elaborate upon the matter of venue in connection with intent. The defendant testified that the mortgage was not filled out when he signed it and that the bank orally consented to the shipment of the property. The jury obviously believed the evidence to the contrary. He denied having had a purpose to defraud the bank, but did not profess that he changed his intentions after leaving the county or that he intended at any time to apply the proceeds of the sale to the payment of his indebtedness to it.

Objection is made to the instructions given, but we think they fairly presented the issues.

A witness for the state testified that in Kansas City, Mo., he saw a check which had been drawn to the defendant—presumably for the mortgaged property; that he asked the holder to bring it to Kansas and he refused. The witness was permitted to testify that the check was dated May 27, 1922, and complaint is made of this ruling. The mere fact that a document is outside of the state is held by this court not to be a sufficient basis for secondary proof of its contents in a civil case (*Shaw v. Mason,* 10 Kan. 184), although the courts are divided on the subject. (Note, L. R. A. 1917 D 530.) In criminal cases the rule is said to be otherwise. (16 C. J. 616; see, also, *The State v. Pollman,* 109 Kan. 791, 201 Pac. 1101.) On a motion for a new trial the defendant produced what purported to be the check in question, dated May 27. The evidence appears to have been introduced to prove a sale. As the defendant testified that he sold the property in Kansas City the matter was no longer important in that aspect. The defendant said on the stand that he was given one check on May 27 and one two days later, cashing each on the day received. We see no basis for a reversal on account of this episode.

In rebuttal the state introduced evidence that on April 24, 1922, the defendant told a deputy assessor that he did not own the junk on hand—that he did not even have the right to sell it. The evi-

dence was relevant to the issue whether the property was mort-
gaged. In rebuttal evidence was also admitted of the defendant
having made various statements; that in reply to a question as to
how he got out of jail he said, "Oh, I was just too smart for these
fellows"; that after his arrest he told another witness that "he was
too smart for these Americans"; and that shortly after the sale of
the property he said that there were a couple of fellows in the town
that he was going to give a good skinning. The statements were
not shown to be connected with the transaction for which the de-
fendant was on trial, but there was, perhaps, room for an inference to
that effect. In any event we do not regard their admission as re-
quiring a reversal.

Complaint is also made of the extent to which cross-examination
of the defendant's wife was permitted. The trial court has a wide
discretion in such matters and we cannot see that it was abused.

The judgment is affirmed.