## G. L. BOATNER v. STATE.

No. A-10153.   May 12, 1943.

(137 P. 2d 599.)

A. H. Ferguson, of Durant, and W. H. Gilliam, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and W. L. Steger, Co. Atty., of Durant, for defendant in error.

BAREFOOT, J.   Defendant, G. L. Boatner, was charged in the district court of Bryan county with unlawfully disposing of mortgaged property, was tried, convicted and sentenced to serve a term of three years in the State Penitentiary, and has appealed.

For a reversal of this case, it is contended:

1. That the alleged crime was not within the jurisdiction of the district court of Bryan county, Oklahoma.

2. That there was not sufficient evidence in the record to identify the cattle sold at Ft. Worth, Texas, as the cattle included in the mortgage.

The statute under which defendant was charged is section 1946, O. S. 1931, 21 Okla. Stat. Ann. 1941 § 1834, which is as follows:

"Any mortgagor of personal property, or his legal representative, who, while such mortgage remains in force and unsatisfied, conceals, sells, or in any manner disposes of such property, or any part thereof, or removes such property, or any part thereof, beyond the limits of the county, or materially injures or wilfully destroys such property, or any part thereof, without the written consent of the holder of such mortgage, shall be deemed guilty of a felony, and shall, upon conviction, be punished by imprisonment in the penitentiary for a period not exceeding three years, or in the county jail not exceeding one year, or by a fine of not to exceed five hundred dollars: Provided, that the writing containing the consent of the holder of the mortgage, as before specified, shall be the only competent evidence of such consent, unless it appear that such writing has been lost or destroyed."

The evidence reveals that the defendant, G. L. Boatner, who was a resident of Bryan county on September 6, 1939, on that date gave a chattel mortgage to the Citizens National Bank of Denison, Tex., to secure two notes, for the total sum of $3,756; that the property covered thereby consisted of 85 head of cattle, three mules and three horses, a particular description of which it is unnecessary to give. This stock was located at the home of defendant, in Bryan county, and the chattel mortgage was filed in that county, and contained the usual terms with reference to the removal, sale or disposal of property by the mortgagor without the written consent of the mortgagee.

The evidence revealed that when the mortgage became due in the fall of 1940 and was not paid, the bank had its representatives make investigation, and the only part of the property that could be found was one cow and one calf, and three horses. This property was sold by the bank for the sum of $300, and applied on the indebtedness due.

The evidence further reveals that during the month of August, 1940, the defendant employed two drivers with trucks to convey about 48 head of cattle to the stockyards in Fort Worth, and that such cattle were sold by the Shirley Commission Company. The parties who owned the trucks and transported the cattle testified to being employed by the defendant, and to going to his home and loading the cattle in the night, and delivering them at Fort Worth. The defendant accompanied the trucks to Fort Worth and conducted the sale of the cattle, but he did not return with them, stating to the drivers that he was going to stay in Fort Worth for a day or so and rest up, and come home on a bus.

He did not return to his home in Bryan county, but was next heard of when he was arrested in the State of Arizona, where he was going under an assumed name. This was after a complaint had been filed against him in Bryan county, and a warrant for his arrest had been placed in the hands of the sheriff of that county.

The evidence further reveals that the cattle delivered and sold at Fort Worth were in brands similar to the ones covered by the chattel mortgage. There were other circumstances which the jury had the right to consider, and which reasonably tended to show that the cattle disposed of by defendant were the identical cattle covered by the mortgage. The property was disposed of without

the consent of the owner and holder of the note and mortgage.

The only evidence offered by defendant was five witnesses, who testified to his good character and reputation. The defendant did not testify.

The above statement of the evidence is a sufficient answer to the contention of the defendant as above set forth. The mere fact that the cattle were taken from Bryan county and sold in the State of Texas would not, in our opinion, oust Bryan county of venue; nor would it prohibit a prosecution under the above-quoted statute.

In the case of Dobbins v. State, 40 Okla. Cr. 334, 268 P. 1116, the question of removing mortgaged property under the statute above quoted was under consideration. The evidence revealed that the property was removed from Cotton county beyond the limits of the state, without the consent of the holder of the notes and mortgage, and this evidence was held sufficient to sustain the judgment and sentence.

A case directly in point, and which gives the reason for the rule announced, is a case from the Supreme Court of Kansas, State v. Gorman, 113 Kan. 740, 216 P. 290. In this case a chattel mortgage had been given on property located in Kansas, and the property was shipped to and sold in Kansas City, Mo. The court said:

"By objections to various rulings the defendant raises the most important question in the case: Whether a conviction under the statute cited can rightly be had in any case where the mortgagor with intent to defraud ships mortgaged chattels out of the state and sells them there. It is our conclusion that within the meaning of the statute such conduct amounts to a disposal of the goods in this state, and that the offense is punishable in the county from which the shipment is made. The phrase 'to dis-

pose of' is one of wide application, but in criminal statutes, especially when associated with 'to sell,' it has been held to involve a transfer of title or possession or destruction of the property to which it is applied. 11 C. J. 639; Scott v. State, 6 Ga. App. 332, 64 S. E. 1005, in effect quoted from in 18 C. J. 1281. In the case last cited a statute forbidding a cropper to 'sell or otherwise dispose of' a part of a crop without the consent of the landlord was held not to be violated by a removal of the property from one county to another in the same state. In the opinion it was said, however:

" 'It might be that for a cropper to move any part of the farm products across the state line would be to dispose of it, as that would be a material interference with the landlord's constructive possession, in that it would destroy his right to resort to those remedies which are provided by the laws of this state for the maintenance of his peculiar and superior rights in the property.' 6 Ga. App. 334, 335, 64 S. E. 1006.

"The note to the text already referred to also cites a Kentucky case in which a conviction was upheld under a statute making it a misdemeanor for the owner of a crop to 'sell or dispose' of it without the written consent of an agent selected to handle it under a pooling contract, the evidence showing that the defendant had shipped his crop to Cincinnati, where it was sold. In the opinion it was said:

" 'Indeed, the mere removal of the tobacco from Mason county by him without the consent of the selling agents and with the intent on his part to sell it without their consent, in violation of the pooling contract, was a disposal of it within the meaning of the statute. The actual sale of the tobacco in Cincinnati was a mere incident or culminating act of the transaction, furnishing conclusive evidence of the fraudulent intent with which he removed the tobacco from Mason county. The Act of removal without the consent of the selling agents put it out of their power to grade or sell the tobacco as pro-

vided by the pooling contract, and, as the removal of it by appellant was with the intent to sell it in violation of the pooling contract, he thereby unlawfully disposed of it, even before the act of sale, within the meaning of the contract; and in so doing subjected himself to the statutory penalty. If appellant removed the tobacco from Mason county with the fraudulent intent to sell it himself without the consent of the selling agents of the pool and then gave it away, threw it into the Ohio river, or burned it, it would have been an unlawful disposal of it within the meaning of the statute.' Collins v. Commonwealth, 141 Ky. 564, 568, 133 S. W. 233, 234."

The court quotes from State v. Rice, 43 S. C. 200, 203, S. E. 986, and State v. Haynes, 74 S. C. 450, 55 S. E. 118; and further on in the opinion states:

"In State v. Perkins, 112 Kan. 455, 210 P. 1091, the defendant was charged with fraudulently concealing mortgaged property. A discharge was asked on the ground that the evidence was insufficient for a conviction, the point being made that no concealment had been shown. In affirming the denial of the request this court said: 'The evidence tended to show that the defendant, after giving the chattel mortgage, left Douglas county, the county of his residence, took the automobile with him and went to Arizona where he was known by an assumed name given by him. That evidence was sufficient to justify the jury in concluding that he took the automobile away from Douglas county to conceal it with the intent to defraud the mortgagee.' 112 Kan. 456, 210 P. 1092. That case is not absolutely parallel to the present one, but the analogy is close, the defendant's course in Arizona having been relied upon to characterize his conduct here, and the inference being obvious that he did not physically conceal the car in Douglas county.

"For the mortgagor to take mortgaged chattels out of the state with a purpose to sell them there and keep the proceeds, in our judgment, amounts to a violation of the Kansas statute in that it is a disposal of the prop-

erty in fraud of the mortgagee's rights accomplished in this state. The fact of the subsequent sale and retention of the money is important as evidence characterizing the entire transaction, although not essential to a completed offense.

"Inasmuch as we hold the evidence to have shown the commission of an offense in Kansas, we have no doubt of its being punishable in the county from which the shipment was made, although another county was necessarily crossed before reaching the state line. The statute provides that:

" 'When a public offense has been committed, partly in one county and partly in another, * * * the jurisdiction is in either county.' Cr. Code § 23 (Gen. Stat. 1915, § 7932).

"In behalf of the defendant it is urged that in order for such a provision to apply one of two conditions must exist:

" 'Either the offense must be divisible, and each part must be unlawful in and of itself, and committed at a different time and place, or it must consist of more than one act, each of which acts, or the effect of each, must constitute an unlawful element of the offense, without the presence of which the offense could not be consummated.' 16 C. J. 196.

"We discover no difficulty in saying, if necessary, that the defendant's disposal of the mortgaged property by getting it out of the state for sale was accomplished by the act of causing it to be loaded in a car in Miami county and carried into Johnson county, and by the act of causing it to be carried through Johnson county to the state line, the two acts being essential to the crime. Of a similar situation it has been said: 'If it should be conceded that the cotton was removed from the place where produced in Saluda county, with intention to dispose of it in Lexington county, and was sold or disposed of in the latter county, the statute would be violated in either county, for the act of removal is inseparably con-

nected with the disposition, an essential part of it, and within the prohibition of the statute.' State v. Perry, 87 S. C. 535, 541, 70 S. E. 304, 306.

"The defendant was found guilty of selling and disposing of the property. The statute, however, is in the disjunctive, making it an offense to sell or dispose of it. The evidence justified a conviction for disposing of the property, and it is immaterial whether or not it would have warranted a finding of guilty if he had been charged merely with selling it."

The contention that the evidence was not sufficient to identify the cattle sold in Fort Worth as being the cattle included in the mortgage cannot be sustained. Some of the evidence was what is known as circumstantial evidence, but in the absence of any explanation by the defendant, was entirely sufficient to sustain the verdict rendered.

Finding no error, the judgment and sentence of the district court of Bryan county is affirmed.

JONES, P. J., and DOYLE, J., concur.