**William L. KEMPTON, Appellant
(Defendant below),**

v.

**The STATE of Wyoming, Appellee
(Plaintiff below).**

**No. 3961.**

Supreme Court of Wyoming.

Sept. 3, 1971.

Ted C. Frome, Afton, for appellant.

Clarence A. Brimmer, Atty. Gen., and Frederic C. Reed, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

Appellant, William L. Kempton, was charged with selling mortgaged property and with removing such property from the State of Wyoming, with intent to deprive the mortgagee of its security. The state offered evidence of a sale in Canada and the trial court dismissed that phase of the charge on the theory that it had no jurisdiction over an act committed in Canada.

Kempton was found guilty of removing mortgaged property from Wyoming with intent to deprive the mortgagee, Jackson State Bank, of its security. On appeal to us, he states the sole issue is whether the defendant had an intent to deprive the mortgagee of its security at the time the defendant removed the mortgaged property from Wyoming. It is admitted the property was taken from Wyoming into Montana and on into Canada.

Appellant's preliminary statement on appeal gives recognition of two principles

concerning intent which afford a good starting point for our consideration of the subject. They are:

1. Where intent to defraud is an element of the offense, it is determined from the attendant facts and circumstances; and

2. The existence of such an intent is ordinarily a jury question.

### The Statute

Section 6-149, W.S.1957, 1971 Cum. Supp., makes it a felony for any person who has mortgaged personal property, during the term of the mortgage lien, to—

"* * * remove * * * such mortgaged property * * * out of the jurisdiction of the district court of the county wherein such property was at the time such mortgage was given, with intent to deprive the mortgagee or secured party of his security, without first obtaining the consent in writing of the mortgagee or secured party thereof to such removal * * *."

We cannot help being aware of the fact that mortgaged motor vehicles are commonly driven from Wyoming to places like Denver, Salt Lake City and Billings, without intent of wrongdoing. Where the owner returns in a few days and keeps up his mortgage payments, there is ordinarily no basis for believing an intent to deprive the mortgagee of his security existed.

It can hardly be expected that a defendant in a case of this kind is going to take the witness stand and say he intended to deprive the bank of its security. Therefore, defendant's intent necessarily has to be inferred from what he does. It is proved not only by what he has done before leaving the state, or at the time of leaving; it is proved largely by what he does after leaving. His future course of action speaks louder than anything else with respect to a previously acquired intent.

### Statement of Facts

According to appellant's statement of facts in the instant case, the defendant borrowed $4,400 from the Jackson State Bank and gave the bank a mortgage on certain personal property, including a Holmes 500 Wrecker unit. Kempton's attorney claims Kempton told the president of the bank he was going to Montana. Counsel also claims oral permission for taking the wrecker to Montana was given.

Following his conversation with the president of the bank, the defendant did not go directly to Montana. He and his wife first went to Thermopolis, Wyoming, for three or four days and then to Pueblo, Colorado, taking the wrecker with them. They then returned to Thermopolis and stayed about a week. After that they went to Montana where defendant, according to his testimony, "followed the trap shooting circuit from town to town."

As the attorney for appellant tells the story, defendant and his wife went from Montana on to Calgary, Alberta, Canada. There defendant contacted Motor Inn Towing, and this contact resulted in Motor Inn Towing acquiring the wrecker unit. The state's evidence indicates a sale by the defendant to Motor Inn Towing. Although appellant's attorney calls the transaction a lease arrangement, he nevertheless concedes the jury, from the evidence, could well have found a sale occurred.

We are unable to accept in its entirety the statement of facts as presented to us by appellant's attorney. The evidence concerning oral permission by the bank's president, for Kempton to take the mortgaged property into Montana, is in serious conflict. What Kempton himself testified to was that he told the bank president they were going to Montana and the president said that it would be fine to take the equipment anywhere "as long as I kept the payments up." Kempton then testified that he asked for written permission and the president said he would not give it.

On the other hand, the president of the bank, Felix Buchenroth, Jr., testified he gave neither written nor oral permission to take any of the equipment out of the state. There is in the record a letter addressed to

Mrs. Kempton which was written by Floyd King, attorney for the Jackson State Bank. It states:

"I have checked with Mr. Buchenroth concerning your letter and he states that he did give verbal permission to take the wrecker to one designated location in Montana, only, and no permission was given at any time to take the wrecker into Canada."

We fail to find in the record any explanation as to when the permission referred to by King was given; what the one location was; whether Kempton ever went to that particular location; or whether Kempton ever did work with his wrecker in Montana after he claims to have obtained permission for such. Even if it be assumed that Kempton had oral permission to take the wrecker to one location in Montana, it must be assumed the intended purpose was to use it for work at that location. There is no evidence, however, that he worked the wrecker in Montana or even looked for work for it in that state. The most the jury could infer about his going into Montana was that it was for pleasure (trap shooting), or in order to get into Canada.

### Need For Writing

The controversy over whether the defendant had any oral permission, and if so whether it was general or limited, points up the reason for the statutory provision (in § 6-149) that the consent must be in writing. Kempton was not unfamiliar with the situation. Several months before he claims to have obtained the oral permission now in question, he obtained written permission from the Jackson State Bank to take a wrecker truck to Salt Lake City, Utah. He testified he asked for written permission at the time now in doubt.

Counsel for appellant, assuming there was oral consent, argues such consent waived written permission for removal. Counsel for the state says there is a conflict in the authorities on this point and that the weight of authority is on the side of no waiver.

We prefer to stay with the language in our statute and base our decision on it. Section 6-149 pertains to a removal of mortgaged property, with *intent* to deprive the mortgagee of his security, "without first obtaining the consent in writing of the mortgagee" to such removal. According to this language three things must concur before there is a crime. (1) There must be a removal; (2) there must be an intent to deprive the mortgagee of his security; and (3) there must be no written consent of the mortgagee.

Thus, when the mortgagee has given a written consent to the removal, there could be no violation of law, and the matter of intent would not be involved. On the other hand, under our statute, if written consent is absent when a mortgagor removes mortgaged property from the state, the question to be determined is whether the mortgagor intended to deprive the mortgagee of his security. This brings us back to the question of intent which, according to appellant's preliminary statement on appeal, is to be determined from the attendant facts and circumstances and is a jury question.

We cannot overlook the testimony of Buchenroth that he did not give oral consent for Kempton to remove the mortgaged wrecker from Wyoming. The jury was under no compulsion to believe the testimony of the defendant. In any event, the most that could be inferred from his testimony was that he asked for written consent; that it was denied; and that he was in effect told what the law actually is—that he could move the property anywhere as long as he kept up his payments and did nothing to deprive the bank of its security.

The jury could well believe from the whole of the evidence, and apparently it did so believe, that Buchrenroth gave no oral permission to Kempton, except possibly permission to take the wrecker to only one designated location in Montana. The jury would surely infer that this meant to that single location and for the purpose of using the wrecker at that location. It could not be inferred that permission was given to take the wrecker from town to town

for trapshooting and then on into Canada where the wrecker was sold.

### The Matter of Intent

Even appellant's own attorney recognizes that the jury had every right to believe Kempton had formed an intent to deprive the bank of its security when he disposed of the wrecker in Canada. It follows from this that the jury could just as well believe the intention had already been formed when the defendant crossed into Canada. If the intention had already been formed at that time, then when did the intention first come into being?

Neither the defendant nor his attorney has tried to fix a time or place when the defendant's wrongful intention originated. As appellant's attorney has stated it, the existence of such an intent is a jury question. If the jury believed, as it surely did, that the trip through Montana, from town to town, and on into Canada was not in keeping with any written permission or within the intended scope of any oral permission, then the jury could very well conclude the intent was formed when the defendant decided upon that trip. If so, the defendant removed the mortgaged property from the State of Wyoming *with* the criminal intent already formed.

Appellant asserts that remoteness in time (about two months) between leaving the State of Wyoming and sale of the wrecker in Canada destroys the intent the jury found to exist in the defendant's mind when he left Wyoming. No cases are cited to support such a theory. In any event, the question of remoteness ordinarily goes to the weight and not the competency of the evidence; and whether evidence is so remote as to be excluded is a matter within the discretion of the trial court.[1]

In an earlier case similar to the one before us, State v. Gorman, 113 Kan. 740,

216 P. 290, 291, it was recognized that the actual sale of mortgaged property was an incident furnishing conclusive evidence of the fraudulent intent with which a mortgagor removed the property. We need not say the sale made by Kempton was "conclusive" evidence. It is sufficient to say it was evidence which the jury could consider, of the defendant's intent to deprive the bank of its security.

In a more recent case, Saylor v. Commonwealth, Court of Appeals of Kentucky, 317 S.W.2d 875, 876, it was held evidence that the mortgagor had sold an automobile, when it developed serious motor trouble while he was en route home from a trip to Detroit and Chicago in an effort to obtain work, was sufficient to take to the jury the case against him for removing a mortgaged automobile from the state with intent to prevent or hinder enforcement of lien, notwithstanding his contention that lack of money had been responsible for his failure to call the mortgagee before selling the vehicle and that he had not intended to hinder enforcement of the mortgage but merely to get home.

Also, in Sims v. Commonwealth, Court of Appeals of Kentucky, 260 S.W.2d 393, 394, there was evidence that a mortgagor disposed of mortgaged property with the result that the mortgagee was prevented from foreclosing its lien. The court said the element of intent to defraud the mortgagee may be inferred by the jury from the attendant circumstances shown by the evidence; and whether or not such intent existed was a question of fact to be determined by the jury.

In Rapp v. State, Okl.Cr., 413 P.2d 915, 918, it was developed by the evidence that a defendant sold a mortgaged living room suite and bedroom suite and nothing further was paid to the mortgagee. The court was of the opinion that there was ample evidence, if believed by the jury, to justify

1.  State v. Koch, 64 Wyo. 175, 189 P.2d 162, 164; State v. Evans, 88 Ariz. 364, 356 P.2d 1106, 1112; People v. Kelly, 168 Cal.App.2d 387, 335 P.2d 955, 956; State v. Poulos, 196 Kan. 287, 411 P.2d 689, 693, cert. den. 385 U.S. 827, 87 S.Ct. 63, 17 L.Ed.2d 64; State v. Nelson, 139 Mont. 180, 362 P.2d 224, 228; and State v. Jaynes, 165 Or. 321, 107 P.2d 528, 532.

a verdict of guilty, on a charge of concealing and removing mortgaged property.

Similarly, the evidence against Kempton in the case we are concerned with shows that he made no payments on his mortgage after leaving Wyoming and after disposing of the mortgaged property, prior to his arrest on the charges here involved. Approximately two years after the property was disposed of and during the progress of criminal proceedings against him, the defendant made a payment of $100.00, leaving an unpaid balance of more than $4,000 on his note and mortgage.

■ Appellant suggests the trial court should have granted him a new trial because it determined it had no jurisdiction over the sale portion of the charge and in the meantime evidence pertaining to the sale had gone to the jury. The trial court took the position that evidence of the sale was admissible in any event because it tended to prove the defendant's intention to deprive the mortgagee of its security.

We agree with the trial court. As we have already indicated, subsequent acts of the defendant, including the sale, were evidence of a previously formed intention. Even the fact that Kempton contacted Motor Inn Towing in order to sell the equipment to it would help to prove a previously formed intention rather than one which arose at that time.

■ Also, the appellant suggests on appeal that there was an error in the date when the crime was committed, as stated in the original complaint. The error was not contained in the information on which the defendant was tried in the district court. We need not concern ourselves at this stage with such an error in the preliminary proceedings. The defect was not presented to the trial court, and such defects are waived if not excepted to prior to the defendant's plea of not guilty.[2]

If we have not by direct reference answered all of the points listed in appellant's statement of the argument, we have at least done so inferentially. All of the assignments presented have been considered and we find no reversible error.

Affirmed.

Justice GRAY, dissenting.

I am constrained to dissent. To me the majority builds upon an unsound premise. It is first said that there is a "serious conflict" in the evidence with respect to that portion pertaining to the issue of the claimed oral consent of the bank to the defendant to remove the vehicle here involved from Teton County, Wyoming, to Montana. While there may have been a conflict in words inasmuch as defendant testified he had such consent and the bank's president testified unequivocally on the State's case in chief that the bank had not given such consent, written or oral, that scarcely creates a real conflict upon which the finding of the jury is binding upon this court in view of the bank's letter admitting it had given oral consent. Even the State concedes in its brief that oral consent was given and centers entirely upon the transaction occurring in Canada. True, the letter was couched in guarded language when it stated that such consent was limited "to one designated location in Montana," but such location was never identified. Likewise when the bank's president was called for rebuttal he retreated from his denial that consent was given, admitted it was orally given in April 1968, and in support of the letter with respect to location testified, "I believe it was Scoby, Montana." The record was not further developed by the State to prove what the limitation of the consent actually was and that defendant had violated it. To me there was no substantial evidence creating a real conflict and it is most unreasonable to suppose that the defendant would seek and obtain such consent with a preconceived scheme to deprive the bank of its security. See Steadman v. Topham, 80 Wyo. 63, 338 P.2d 820, 825–827; and Montgomery Ward & Co. v. Arbogast, 53 Wyo. 275, 81 P.2d 885, 892.

2. See § 7–188, W.S.1957; and Belondon v. City of Casper, Wyo., 456 P.2d 238, 243.

The majority then undertakes to overcome this infirmity in the State's proof by holding that the statute requires the consent to remove the vehicle out of the county to be in writing. That I cannot accept. In the first instance it is unquestioned that the statute which defendant is claimed to have violated is for the sole benefit and protection of the financial security holder. Notwithstanding the State's reliance upon Ellis v. State, 74 Fla. 215, 76 So. 698, and State v. Burton, 101 Kan. 62, 165 P. 847, which in essence hold that oral consent is entitled to no consideration, the fact is that the generally prevailing rule and the only reasonable rule is to the contrary despite the requirement that such consent must be in writing. 15 Am.Jur.2d, Chattel Mortgages, § 153, p. 323. To construe the statute in any other manner would be to lay a trap for the unwary.

This, I think, is rather well demonstrated by the within proceeding. The information did not allege that a crime was committed about the middle of May 1968 when the defendant took the wrecker from Wyoming into Montana. On the contrary, the information alleges in one count that defendant not only sold the vehicle in Canada on July 11, 1968, without written consent of the bank but by so doing removed the mortgaged property from Teton County, Wyoming, "with intent to deprive the Jackson State Bank of their security without first obtaining the consent in writing of the said Jackson State Bank." The charge submitted to the jury and upon which the defendant was convicted was the intent to deprive the bank of its security. As I interpret the statute, the gist of the charge is the specific intent of the accused at the time of removal. Proof thereof is an essential element, Pulliam v. State, 167 Neb. 614, 94 N.W.2d 51, 54, and may, of course, be proved by circumstantial evidence. It is fundamental, however, that such intent must exist at the time of the alleged violation of the statute. An intent subsequently formed does not supply the essential elements and it cannot be imputed to an accused "from a subsequent independent transaction." 21 Am.Jur.2d, Criminal Law, § 81, p. 163. Consequently, so far as I am concerned, proof of the disposal of the vehicle in Canada on July 11, 1968, is no proof of an intent to deprive the bank of its security in May 1968. Thus no criminal act within the reach of the statute relied upon was committed at the time defendant took the vehicle into Montana with the consent of the bank, and thus nothing is gained by inquiry into the matter of intent.

The trial court committed fundamental error when at the conclusion of the taking of the evidence it overruled the defendant's motion for acquittal. I would reverse.