THE STATE OF KANSAS v. FRANK J. RIDER.

STOLEN GOODS, *Receiving — Erroneous Conviction.* In a criminal prose-
cution for buying and receiving stolen property, under § 92 of the
crimes act, where the evidence showed that the property was situated
in one county and the defendant was tried in another; and the only
evidence connecting the defendant with the property alleged to have
been stolen, was the fact that he went from the county where he was
tried to the county where the property was found, *held*, that there
was no completed offense committed in the county in which the de-
fendant was tried and convicted, and that such conviction was erro-
neous.

*Appeal from Grant District Court.*

THE opinion states the case.

*S. N. Wood,* and *A. M. Mackey,* for appellant.

*L. B. Kellogg,* attorney general, and *Wm. Easton Hutchi-
son,* county attorney, for The State.

Opinion by GREEN, C.: The information in this case
charged the defendant with feloniously buying and receiving
one mare, of the value of $100, the property of Carl Gall, jr.,
"then lately before feloniously stolen, taken and carried
away," knowing the same to have been so stolen. The part
of § 92 of the crimes act which is applicable to this case is as
follows:

"Every person who shall buy or in any way receive any
goods, money, ights in action, personal property, or any val-
uable security or effects whatsoever, . . . that shall have
been stolen from another, knowing the same to have been so
stolen, shall upon conviction be punished in the same manner
and to the same extent as for stealing the money, property or
other thing so bought or received."

The defendant was tried and convicted in the district court
of Grant county, on the 21st day of July, 1890, and sentenced
to imprisonment in the penitentiary for two years. He ap-
peals to this court.

The evidence in this case shows that the mare alleged to

have been stolen, was taken by John Stoffel from the place
of Carl Gall, in Grant county, about 3 o'clock in the afternoon,
on Wednesday, March 5, 1890, and led to his place in Kearny
county. The claim was made by Stoffel that the animal had
been given to him for one of his, which Gall had been charged
with shooting. There is no evidence to indicate that the de-
fendant ever received or purchased the mare in Grant county.
If he ever received the mare at all, it was in Kearny county.
There is no evidence to connect the defendant with the recep-
tion or possession of the mare in Grant county, and the only
theory upon which the conviction can be upheld is, that the
offense charged to have been committed was begun in Grant
county and completed in Kearny. In accordance with this
theory, the court instructed the jury that if there were any
overt acts committed in Grant county, and if there were a se-
ries of such overt acts continuing into Kearny county, up to
the time of receiving the mare, then such reception would be
in Grant county. The overt acts in Grant county, if any,
consisted in the defendant being present at Hornaday's print-
ing office, in Ulysses, in Grant county, on the 14th day of
March, 1890, where a consultation was had between Stoffel
and his attorney in regard to his retaining possession of the
mare, and the giving of a redelivery bond, in case the animal
should be replevied from him; that the attorney for Stoffel
wrote something on a piece of paper which he gave to the
defendant, and told him to "get 'that or that mare;" that in
pursuance with the advice, the defendant left town and went
to Surprise, in Grant county, and from there to Stoffel's place,
in Kearny county. We do not think the evidence warranted
a conviction in Grant county. There was no evidence that
the defendant commenced the commission of the offense charged
against him in the county in which he was tried. The lan-
guage of § 23 of the criminal code is:

"When a public offense has been committed, partly in one
county and partly in another, or the act or effects constituting
or requisite to the consummation of the offense occur in one
or more counties, the jurisdiction is in either county."

Now, can it be said that the act of the defendant in going from one county to another, under the advice of counsel, to aid a person in maintaining what he regarded as his legal rights, constituted any element of the crime alleged? The defendant was charged with buying and receiving stolen property in Grant county. It is conceded that he did not buy or receive the mare in Grant county, but it is insisted that the overt act which led to the commission of the offense had its inception in this county. Can this be true? The elementary principle is so firmly established, that there must be some act coupled with an evil intent to constitute, in law, a crime, that it is but necessary to state it. Suppose it should appear that the defendant started from Ulysses for the purpose of obtaining the mare in Kearny county: it might be said that the evil intent existed in his mind, but unless that evil intent was combined with some act in Grant county, the offense would not be complete. We do not think the fact that the defendant traveled from one county to another was such an overt act as would constitute an offense. The evil intent might have existed in the mind of the defendant while in Grant county, yet if no act was committed there, one necessary element of the crime would be lacking. There must be a concurrence, in point of time, of the act and intent, to constitute an offense. If the evil intent existed in the defendant's mind in Grant county, to receive the animal charged to have been stolen, there was no act coupled with such intent, and hence there was no completed crime committed in Grant county by the defendant.

It is recommended that the judgment of the district court be reversed.

By the Court: It is so ordered.

All the Justices concurring.