State v. Graham.

Hon. M. A. Breeden, Attorney-General, and W. R. White, Esq., Assistant Attorney-General, for the State.

---

THE STATE OF UTAH, Respondent, v. JOHN C. GRAHAM, Appellant.

CRIMINAL LAW—VENUE—OFFENSE COMMITTED NEAR COUNTY BOUND-ARY—SEC. 4584, R. S. 1898—CRIMINAL PLEADING—SECS. 4730 AND 4584, R. S. 1898—PLACE OF TRIAL—PRESUMPTION OF LAW—IN CRIMI-NAL CASES—INNOCENCE OF ACTS—EVIDENCE—OF ILLEGAL MAR-RIAGE—OF COHABITATION—WHEN ADMISSIBLE—ESSENTIALS OF PROOF—IN PROSECUTION FOR UNLAWFUL COHABITATION—BELIEF OF NEIGHBORS NOT SUFFICIENT.

State v. Graham.

1. CRIMINAL LAW: VENUE OF OFFENSE COMMITTED NEAR COUNTY BOUND-ARY: SEC. 4584, R. S. 1898. Before section 4584, R. S. 1898, can become operative in any criminal case, outside of those relating to offenses committed near the boundary line of two counties, one of two things must appear; either, *first*, the offense must be divisible, and each part be unlawful in and of itself, and committed at a different time and place; or, *second*, the offense must consist of more than one act, each of which acts or effect of such acts must constitute an unlawful element of the offense, without the presence of which the offense could not be consummated.

2. CRIMINAL PLEADING: SECS. 4730 AND 4584, R. S. 1898: PLACE OF TRIAL. The mere existence in some county other than the county of trial of acts or conditions of the defendant, lawful in and of themselves, but necessary to be alleged, under the requirements of section 4730, R. S. 1898, and proven, in order to establish the crime as charged, do not invoke the powers of section 4584, R. S. 1898, so as to permit the trial of the defendant in such other county.

3. PRESUMPTION OF LAW: IN CRIMINAL CASES: INNOCENCE OF ACTS. The law presumes a usual and ordinary state of things, rather than a peculiar and exceptional condition; it supposes legality rather than crime; and virtue and morality rather than the opposite qualities.

4. EVIDENCE: OF ILLEGAL MARRIAGE: OF COHABITATION: WHEN ADMISSIBLE. Evidence of an illegal marriage between the defendant and one or all of the women named in the indictment, together with evidence showing that he cohabited with such women as his wives prior to the time named in the information, is admissible for the purpose of aiding the jury in determining the character of the relation claimed to exist between the parties during the time covered by the information.[1]

5. ESSENTIAL OF PROOF: IN PROSECUTION FOR UNLAWFUL COHABITATION: BELIEF OF NEIGHBORS NOT SUFFICIENT. While it is not necessary to show actual sexual relations, and while proof of other marital associations between defendant and his wife, such as the holding out to the world of a semblance of a marriage, would be sufficient to support a conviction for unlawful cohabitation with another woman, yet a defendant can only be convicted upon proof of affirmative acts upon his part from which the jury might infer guilt, but the mere belief or thought of acquaintances and neighbors and friends can never become an element in any crime.

[1] U. S. v. Cannon, 4 Utah, 122; 7 Pac. 369; U. S. v. Musser, 4 Utah, 153; 7 Pac. 389.

State v. Graham.

Decided March 12, 1901.

Appeal from the Third District Court, Salt Lake County.—
*Hon. A. G. Norrell,* Judge.

Defendant was prosecuted for and convicted of the crime of unlawful cohabitation and appealed to this court.

REVERSED.

*Arthur Brown, Esq.,* and *Messrs. King, Burton & King* for appellant.

In Ball v. United States, 140 U. S. 136, the rule is laid down with regard to the places in which the offense is committed, as follows: "The accused is entitled to be informed of the nature and cause of an accusation against him, and jurisdiction should not be exercised when there is doubt as to the authority to exercise it. All the essential ingredients of the offense charged must be stated in the indictment, embracing with reasonable certainty *the particulars of time and place,* that the accused may be enabled to prepare his defense and avail himself of his acquittal or conviction against any further prosecution for the same cause."

Our statute, above quoted, with regard to the offense committed in two counties, is a copy of the California statute and all of the rest of our criminal jurisprudence is also copied from California. When adopted by this State we adopted the construction already placed upon that statute as completely as if the construction had been added to the statute itself and printed as a part thereof. This question is settled by previous decisions of the Supreme Court of California. People v. Dougherty, 7 Cal. 397; People against Ah Own, 39 Cal. 608; People v.

Scott, 74 Cal. 95; State v. Fraker, 148 Mo. 143, 49 S. W. 1021; 1 Bishop's Criminal Procedure, sec. 381; Connor v. State, 10 Southern Rep. 893.

There was no evidence offered that defendant was not married to Sarah Potter Graham. There was evidence that he was not married to Mary Graham. The law presumes in behalf of innocence that when a man is living with a woman as his wife they are married. Hynes v. McDermott, 91 N. Y. 459; White v. White, 82 Cal. 433.

Request No. 8 should have been given when the prosecution selected one offense giving evidence tending to prove it, the prosecution has no right to fix some other occasion and is deemed to have elected to treat that one as the offense charged. The principle was overruled in this case. People v. Jenness, 5 Mich. 305.

*Hon. M. A. Breeden,* Attorney-General, and *W. R. White, Esq.,* Assistant Attorney-General for respondent.

This court should follow the weight of authority, and not any one State court, even though our statute in some one particular may be a copy.

A case like the one at bar was well considered in a late Indiana decision. In that State the statute reads as follows:

"Where a public offense has been committed, partly in one county and partly in another, or the acts or effects constituting or requisite to the consummation of the offense, occur in two or more counties, the jurisdiction is in either." Archer v. State, 8 Crim. Law Mag.; Hurt v. State, 26 Ind.; State v. Jones, 38 La. An. 792; State v. Timmons, 4 Minn. 325; State v. Robinson, 14 Minn. 447.

In C. v. Gillon, 2 Allen 502, the syllabus of the court gives the opinion of the court as holding, under a statute similar

to ours, that where more than one county has jurisdiction, the indictment may allege the crime to have been committed in either. See, also: C. v. McCoon, 101 Mass. 1; State v. Masteller, 45 Minn., 128; Abrigo v. State, 29 Tex. App. 143; 1 Bishop's New Crim. Proc., sec. 63.

It is claimed by the appellant that the Court erred in admitting evidence of the reputed relation of the defendant and Mary Graham among their neighbors in Provo, and in his brief states that "the court erred in permitting the belief of the neighbors and public to enter into this crime." The evidence admitted was as to their reputed relation, not the individual beliefs of neighbors. This was proper. U. S. v. Higerson, 46 Fed. Rep. 750; 1 Bishop on Marriage and Divorce, sec. 438; U. S. v. Tenney, 8 Pac. Rep. 295.

Defendant's request No. 8 was properly refused. It does not state the law applicable to this case, as the prosecution did not elect to prove an offense prior to the date alleged in the information. The purpose of the evidence referred to in that request was to throw light on the relationship existing between defendant and these two women, between the dates named in the information, by evidence of his conduct and relationship to the women prior to that time. This has been held admissible for such purpose by our Supreme Court in the following cases: U. S. v. Musser (Utah), 7 Pac. 395; U. S. v. Peay (Utah), 14 Pac. 344.

ROLAPP *(District Judge)*.—The defendant in this action was tried in Salt Lake county for the offense of unlawful cohabitation, upon an information, the charging clause of which reads as follows:

"The said John C. Graham on the first day of January, A. D. 1898, and on divers other days, and continually between said first day of January, A. D. 1898, and the twelfth day of

May, 1899, *at the county of Salt Lake,* State of Utah, did unlawfully cohabit with more than one woman, to-wit: one Mary A. Graham and one Sarah Potter, commonly known as Sarah Potter Graham."

The evidence adduced at the trial showed that the defendant cohabited with Sarah Potter Graham as his wife in Salt Lake county, without showing that the relation existing between this woman and defendant was illegal in any way; but on the other hand, the evidence affirmatively shows that the defendant married Mary A. Graham (the other woman named in the indictment) thirty-two years ago, as a plural wife, he then having another wife living, and that for twenty years or more he has cohabited with her as such wife in the county of Utah, in this State.    It was further affirmatively shown that this latter woman has never been in the county of Salt Lake within the period during which it is claimed in the information the defendant unlawfully cohabited with more than one woman; nor has the defendant at any time lived or cohabited with her in Salt Lake county.

The trial resulted in the conviction of the defendant, from which verdict and the subsequent judgment the defendant appeals to this court, assigning as principal errors certain of the instructions as given by the court, and the refusal of the court to give certain instructions as requested by the defendant.

Upon the trial the court below, among other things, charged the jury as follows:

"You are instructed that it is not necessary to find that the defendant cohabited with both of the women named in the information in Salt Lake county; but if you find that he cohabited with Sarah Potter Graham in this county, and with Mary Graham in Utah county, during the time charged in the information, he would be guilty."

And further the court charged that: "If he has so conducted himself towards her that those living in the vicinity had reason to believe and did believe he was living with said Sarah Potter Graham as his wife, then you should find the defendant guilty as charged, provided that you also find from the evidence, beyond a reasonable doubt, that during the same period as above mentioned he lived and maintained the same relations with Mary A. Graham, although such relations with her were maintained in Utah county."

The defendant requested the court to charge the jury as follows:

"Request 1. If at the date of statehood the defendant had two polygamous wives, one in Provo and one in Salt Lake, he had the right to marry either, and commit no offense in living with her. If defendant had as one polygamous wife, Sarah Potter, and lived with her after statehood in Salt Lake, the law will presume in behalf of innocence that he was married to her, and if married to her and lived with no other woman in Salt Lake county, then you should acquit.

"Request 2. It is necessary to allege the exact facts, and if it is sought to prove an offense committed partly in one county and partly in another, then it must be so stated in the information. This information states the offense as committed wholly in Salt Lake county, and can not be sustained by proof that it was committed partly in one county and partly in another.

"Request 3. If the jury find that the defendant was living with one wife in Utah county and with another in Salt Lake county, and never lived with but one in Salt Lake county, then he can not be convicted under this information, which charges him with living with two wives in Salt Lake county.

"Request 7. The act of living and cohabiting with Sarah

Potter Graham in Salt Lake county, was an innocent act, as far as this information is concerned, and not punishable, unless accompanied by proof that somewhere defendant had a lawful wife. No such evidence has been offered in this case, and the jury should acquit."

All of these requests were by the court refused.

Of course, inasmuch as the instructions given by the court were wholly antagonistic in theory to the instructions requested by the defendant, the sole question before this court is, which of the two theories is correct?

Our statute provides (Revised Statutes, sec. 4730) : "The information or indictment must contain .... 2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Sec. 4584 of the Revised Statutes provides as follows: "When a public offense shall have been committed in part in one county and part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense shall have occurred in two or more counties, the jurisdiction shall be in any of such counties. When a public offense shall have been committed near the boundaries of two or more counties, the jurisdiction shall be in any of such counties."

This latter section of our statutes was copied from the California statute, after having received repeated judicial construction from the highest tribunal of that State; and under such circumstances we have repeatedly held that this court will, as a rule, accept the interpretation thus placed upon such borrowed statute by the highest court of the State from whence it came. As early as 1857, in the case of People v. Dougherty, 7 Cal. 396, the Supreme Court of California had occasion to interpret the statute similar in principle to the one under con-

sideration here. In that case the defendant was indicted and convicted for an assault with a deadly weapon, alleged to have been committed in the county of San Francisco, while the evidence showed the crime to have been committed on board a vessel, either while lying at her berth in Sacramento or on her passage to San Francisco. The statute under which the prosecution was commenced provided that "when an offense is committed within this State on board of a vessel navigated on river, bay or slough, or lying therein, in the prosecution of her voyage, the jurisdiction shall be in any county through which the vessel is navigated in the course of her voyage, or in the county where the voyage was terminated."

And the court, in reversing the judgment, said: "The extraterritorial jurisdiction thus conferred upon the courts of the various counties situated upon the navigable waters of the State is special in its character, and in derogation of the common-law rule upon this subject; and whenever it is invoked, the facts and circumstances should be set out in full in the indictment. In this respect the court may be considered as exercising a special and limited jurisdiction, and the facts which give jurisdiction must be clearly alleged and satisfactorily proven."

Again, in the case of the People v. Ah Own (39 Cal. 604), the Supreme Court of California had before it an indictment for the forcible taking and stealing of a man in one county and carrying him into another. The information alleged the offense to have been committed in both counties, and being assailed upon that ground the court says: "The offense was commenced in one county, and consummated in another; but it was only one transaction, occurring partly in each county, and it was not only proper but necessary that the indictment should state the facts, so as to bring the case within the statute."

Again, in the case of the People v. Scott, 15 Pac. 384, which was a case upon an indictment for burglary committed in

San Diego county; the property obtained by the burglary was taken to San Bernardino county. The statute provided that when property taken by any one, by burglary, larceny or embezzlement, has been brought into another county, the jurisdicton of the offense is in either county. The indictment alleged the burglary to have been committed in the county where the information was filed (San Bernardino county). The court held that although that county had jurisdiction, the facts showing where the burglary was committed, and that the property was brought into San Bernardino county, must be alleged in the indictment.

This principle has been universally applied, with two exceptions, one of which is a seeming exception only: The first exception is applicable where the offense was committed within a short distance from the boundary line between two counties, in which event it has been held sufficient to allege and prove the offense to have been actually committed in either. The other class of cases in which there is an apparent diversion from this well-established rule is where the stolen goods are carried by the thief through various counties, in which case the law adjudges that the offense was in truth committed in each of such counties, and, hence, there is no occasion for a statement in the pleading of what occurred in any other county except where the trial is had.

All of the cases cited by counsel for the State either come within one of these two exceptions to the general rule, or they are cases where a dangerous agent has been unlawfully set in motion in one county and the necessary result of such act effected in another, in which event, of course, the jurisdiction of the offense may be laid in either county.

Apart from the consideration of the effect of these adjudicated cases upon the question before us, we do not think that the provision of section 4584 of the Revised Statutes, outside

of those relating to offenses committed near the boundary line of two counties, are at all applicable to this class of cases. Before that section can become operative in any criminal case, one of two things must appear: Either, first, the offense must be divisible, and each part be unlawful in and of itself and committed at a different time and place; or, second, the offense must consist of more than one act, each of which acts or effect of such acts must constitute an unlawful element of the offense, without the presence of which the offense could not be consummated.

The mere existence, in some other county than the place of trial, of acts or conditions of the defendant, lawful in and of themselves, but necessary to be alleged and proven, in order to establish the crime as charged, do not invoke the power of this statute so as to permit the trial of the defendant in such other county.

Applying this reasoning to the case at bar, and viewing the evidence in the light of the presumption of innocence accorded to every accused person, we must inevitably come to the conclusion that the jury were bound, under the evidence in this case, to regard as wholly innocent any relation, whether actual or apparent, existing between the defendant and the woman named in the information who resided in Salt Lake county, and who claimed to be his wife. If in any case the proof shows the presence of a relation founded either on actual marriage or on the holding out of its existence, between a man and a woman living within the jurisdiction of the court, and no evidence of any illegal inception or character of the relation is produced, the conclusive presumption arises that such relation is that of lawful marriage. U. S. v. Snow, 9 Pac. 686; U. S. v. Smith, 14 Pac. 291.

This is so upon the well-established rule that the law presumes a usual and ordinary state of things, rather than a pecu-

liar and exceptional condition; it supposes legality rather than crime; and virtue and morality rather than the opposite qualities.    Caujolle v. Ferrie, 23 N. Y. 138.

While residing with his lawful wife in Salt Lake county, the defendant did not "flaunt in the face of the world the ostentation and opportunities of a bigamous household." Consequently, while the defendant's association and relations with the lawful wife in Salt Lake county was a necessary matter to be plead and proven by the State, yet such association, act or condition was not a public offense, nor part of any offense; and not being or constituting an unlawful element of any offense it could not be an act or the effect of an act necessary to the consummation of a crime, because no crime is composed in whole or in part of lawful acts.

We think, therefore, that the theory upon which the main instructions of the lower court were given were erroneous.

The appellant also assigns as error the refusal of the court to give the following requested instruction:

"The prosecution in their information have fixed the time of this offense from the first day of January, 1899, and have given evidence of other acts, introduced for the purpose of showing cohabitation of the defendant with the two women named prior to the first day of January, 1898. When the prosecution have given evidence for the purpose of showing an offense, they are bound by the time and occasion selected, and having introduced evidence of the acts first prior to that of 1898, that was an election to select the prior date within which to prosecute, and the prosecution is now limited to a time prior to the first named date, January 1, 1898."

We see no error in such refusal. This court has repeatedly held that evidence of the illegal marriage between the defendant and one or all of the women named in the indictment,

together with evidence showing that he cohabited with such women as his wives prior to the time named in the information, is admissible for the purpose of aiding the jury in determining the character of the relation claimed to exist between the parties during the time covered by the information.    U. S. v. Cannon, 7 Pac. 369; U. S. v. Musser, 7 Pac. 389.

The appellant further assigns as error the fact that a witness was permitted to answer the following question with reference to the defendant and his illegal wife at Provo: "I will ask you whether it is the general reputation in Provo among their acquaintances, neighbors and friends that they are husband and wife?"

We think this question should have been excluded. While it is not necessary to show actual sexual relations between such parties, and while it is true that a conviction could have been supported by showing other marital associations between the defendant and such wife, such as the holding out to the world a semblance of marriage, yet the defendant could only be convicted upon proof of affirmative acts upon his part from which the jury might infer guilt.    But it would be setting a dangerous precedent to permit the mere belief or thought of acquaintances and neighbors and friends to become an element in any crime.    U. S. v. Langford, 21 Pac. 409.

For the foregoing reasons the judgment of the court below is reversed, the verdict set aside, and the information quashed.

*Baskin, J.,* concurs; *Bartch, J.,* in the result.