STATE v. L. F. SCOTT.[1]

January 12, 1934.

No. 29,681.

[1]Reported in 252 N. W. 225.

*M. A. Jordan, Thomas Kneeland,* and *Harry G. Pliam,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *H. E. Stassen,* County Attorney, and *C. P. Stone,* for the state.

OLSEN, *Justice.*

Defendant was indicted under 2 Mason Minn. St. 1927, § 10360, and was convicted. He appeals from the judgment sentencing him to the state prison.

■ Defendant challenges the indictment, claiming that it fails to state facts sufficient to constitute a public offense. The statute under which it is drawn reads as follows:

"10360. Every person who shall wilfully, with intent to defraud, by color or aid of a check, draft, or order for the payment of money or the delivery of property, when such person knows that the drawer or maker thereof is not entitled to draw on the drawee for the sum specified therein, or to order the payment of the amount or delivery of the property, although no express representation is made in reference thereto, shall obtain from another any money or property, shall be guilty of stealing the same, and punished accordingly."

The indictment reads as follows:

"L. F. Scott, accused by the grand jury of the county of Dakota, by this indictment, of the crime of grand larceny, first degree, committed as follows:

"The said L. F. Scott between the 31st day of January and the 10th day of February, A. D. 1931, at the village of Lakeville, in said county of Dakota, and state of Minnesota, did then and there wilfully, wrongfully and feloniously, with intent to defraud and by color and aid of a series of bank checks, take, steal and obtain from the First National Bank of Lakeville, a national banking corpora-

tion, certain moneys, to-wit: Twenty-seven thousand two hundred seven dollars and twenty-nine cents, lawful, genuine money of the United States, then and there the property of the said First National Bank of Lakeville, that is to say, the said L. F. Scott then and there deposited in the said First National Bank of Lakeville a series of sixteen checks drawn on the Peoples National Bank of Shakopee, a banking corporation, conducting a general banking business in the city of Shakopee, Minnesota, said checks being numbered 1050 to 1055 inclusive and 1060 to 1069 inclusive and being drawn by said L. F. Scott in the name of the L. F. Scott Oil Company, he the said L. F. Scott then and there well knowing that the said L. F. Scott Oil Co. did not have sufficient funds or credit with said Peoples National Bank to pay said checks, and he the said L. F. Scott then drew upon the credit established at the Lakeville National Bank and obtained from said Lakeville National Bank the sum of Thirty-five thousand two hundred seven dollars and twenty-nine cents before the said Lakeville National Bank discovered that the checks drawn on the Peoples National Bank were not good contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Minnesota."

The indictment does directly charge that defendant wilfully and feloniously, with intent to defraud and by color and aid of a series of checks, did steal and obtain from the Lakeville bank $27,207.29, then knowing that he did not have funds or credit in the Shakopee bank, upon which he drew the checks, sufficient to pay the same. The checks are sufficiently described. It is urged that there should have been a direct charge that defendant did not have funds or credit in the Shakopee bank for the payment of the checks. Knowledge by him that he did not have funds or credit in that bank for payment of the checks would seem necessarily to include lack of funds or credit in that bank to meet the checks. The statute makes knowledge that the maker of the check or draft is not entitled to draw on the drawee the important fact in that respect.

It is further urged that the statement that defendant "drew upon the credit established at the Lakeville National Bank," without any statement connecting the same with the checks drawn by him on

the Shakopee bank, renders the indictment insufficient. The word "then" immediately precedes the word "drew" in the indictment. Reading what immediately precedes and follows the words in the indictment complained of, it seems clear that the credit referred to was credit obtained by deposit of the checks. There is no such uncertainty or inconsistency as to render the indictment invalid. We hold the indictment sufficient.

■ The question of venue is presented. The checks mentioned in the indictment were promptly sent by the Lakeville bank to its Minneapolis correspondent bank, by that bank transferred to the Federal Reserve Bank at Minneapolis, and by the Reserve bank forwarded to the Shakopee bank for payment. Payment was refused for want of funds. There had been some delay at Minneapolis in forwarding the checks to Shakopee because of some lost checks for which duplicates had to be secured, and it required some days' time to transmit the checks and to receive notice of their nonpayment, so that 10 or 11 days elapsed from the time the checks were sent out by the Lakeville bank before it was informed of their nonpayment. During that time defendant issued checks in a sum exceeding $27,000 on the Lakeville bank. These checks were then cashed by defendant, or the payees in Minneapolis, and in regular course by the Reserve bank, which then sent them to the Lakeville bank for payment, and that bank paid them by a draft sent to the Reserve bank.

Under the evidence presented, the question of venue is not serious. It was properly laid in the county where the Lakeville bank, which suffered the loss, was located. Where checks or drafts are deposited in a bank to the credit of the depositor and the money thereafter paid out by the bank on his checks, the transaction amounts practically to the same as if he had received the amount of the checks himself in money. State v. Smith, 162 Iowa, 336, 144 N. W. 32, 49 L.R.A.(N.S.) 834. Another sufficient ground is that the draft issued and paid by the Lakeville bank to the Federal Reserve Bank for the amount represented by the dishonored checks was equivalent to cash. Under the indictment charging the obtaining of money, it may be shown that payment was made by a valid draft duly.

honored. State v. Cary, 128 Minn. 481, 151 N. W. 186. The only party that suffered any loss and had any reason to complain was the Lakeville bank.

■ Error is assigned upon the refusal of the court to strike out certain exhibits, being a number of checks. The issue was that of fraud and intent, and, as will hereinafter be noted, the evidence related to defendant's continued interchange of checks between the Lakeville and Shakopee banks—what is generally known as kiting. The exhibits were properly received. The court also denied motions to strike out the testimony of several witnesses having some bearing on the question of fraud and intent. There was no error in denying the motions to strike.

■ The court sustained an objection to an offer of testimony by defendant's witness Ida Kirk to the effect that in a conversation by her with the cashier of the Lakeville bank, shortly after defendant was arrested, the cashier said that defendant for two years made overdrafts on the Lakeville bank which the bank had paid and taken care of. This evidence, if admitted, would not appear to have any bearing upon the charge of obtaining money from the bank by means of checks on another bank. Defendant's account with the bank and his own books of account were in evidence and the state of the account fully shown. If there was any error in excluding the testimony, no prejudice resulted.

■ The sufficiency of the evidence to sustain the verdict and judgment requires a brief consideration. The evidence shows that for a considerable time before the break-up the defendant, in his business, had engaged in the practice of manipulating or kiting checks between the Shakopee and the Lakeville banks, in each of which he had an account. He would draw checks on the Shakopee bank, then, before these checks in regular course would reach the Shakopee bank, he would draw checks on the Lakeville bank and deposit them to his credit in the Shakopee bank sufficient to meet the incoming checks. He would do the same thing in reverse order as to checks drawn on the Lakeville bank. It required some three or four days for the checks, in regular course, going through other banks and the Federal Reserve Bank at Minneapolis, to reach the

bank upon which they were drawn. In that way he was enabled to obtain and use funds of the two banks on floating checks not covered by actual deposits or money in his accounts in the banks. Defendant was engaged in the business of selling and distributing gasolene and oil at wholesale. His principal place of business was located at or near Oxboro, a short distance south of Minneapolis. He did a large amount of business. These floating checks, at the time of the break-up in February, 1931, amounted to more than $35,000, and the resulting loss to the Lakeville bank was about $27,000.

We hold the evidence sufficient to justify the jury in finding beyond a reasonable doubt that defendant, with intent to defraud, obtained money from the Lakeville bank by color and aid of checks, knowing that he was not entitled to draw such checks on the bank on which they were drawn.

It is not important that defendant's business was conducted in the name of a corporation organized by defendant, of which he was the president, treasurer, and active manager and of which he owned most of the stock.

Judgment affirmed.