No. 44,942

William H. Addington, *Appellant,* v. State of Kansas, *Appellee.*

(431 P. 2d 532)

Opinion filed September 7, 1967.

*Shelley Graybill,* of Elkhart, argued the cause, and *Daniel C. Bachmann,* of Wichita, was with him on the briefs for the appellant.

*Richard J. Rome,* County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Raymond F. Berkley* and *Patrick L. Dougherty,* Assistant County Attorneys, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from an order denying an application for a writ of habeas corpus.

The facts are not in dispute.

The appellant was complained against in five counts with feloniously issuing warehouse receipts in Reno County, Kansas, knowing at the time that no wheat for which the receipts were issued had been received by him as owner of the warehouse or placed under his control.

At the preliminary hearing the uncontradicted evidence showed that Addington Grain Company, Inc., a Kansas corporation with principal offices at Wichita, Kansas, owned and operated a licensed

warehouse in Hutchinson, Reno County, Kansas in December of 1965. Warehouse receipts on forms furnished by the State Grain Inspection Department but paid for by the corporation were issued by the corporation covering wheat in its Hutchinson facility. Receipts issued by Addington Grain Company, Inc. were registered by the Trust Department of the Merchants National Bank in Topeka, Kansas, a bonded registrar authorized and approved by the State Grain Inspection Department. During the period in question all of the business of Addington Grain Company, Inc. was conducted at its principal office at 4601 East Douglas in Wichita, Kansas.

On December 8, 1965, appellant executed the five warehouse receipts in question at his office, which was also the office of the corporation, at 4601 East Douglas Avenue, Wichita, Kansas. They were brought to Topeka the same day for registration. The next day appellant called on the president of the Eastside National Bank in Wichita, Sedgwick County, Kansas, and submitted the warehouse receipts as collateral for loans. Appellant there endorsed the receipts and delivered them to the banker who made the loan and retained the receipts in the bank files. The receipts were executed and endorsed by the appellant as the authorized agent of the corporation.

At the close of the state's evidence appellant moved for a discharge for the reason that the court's jurisdiction had not been established. The motion was overruled. At the close of the preliminary hearing appellant again renewed his motion for a discharge which was overruled.

The magistrate ordered the appellant held to answer to the charges in the complaint in the district court of Reno County. The appellant was ordered committed to the Reno County jail until bond was posted in the sum of $5,000. The appellant, while so committed, filed the petition for a writ of habeas corpus challenging the authority of the magistrate because of lack of venue in Reno County.

By agreement the evidence presented to the trial court consisted of the pleadings, exhibits, briefs and transcript of proceedings had in the magistrate court. After due consideration appellant's petition was denied, the temporary writ previously issued by the clerk dissolved at appellant's cost and appellant was remanded to the custody of the sheriff of Reno County. Although the above facts are agreed to for the purpose of this controversy we do not understand

that the parties are necessarily bound thereby in the trial of the case in chief.

This appeal is from the order denying the writ.

We are confronted with a jurisdictional question raised by the appellee which must be disposed of before we proceed with the merits of the appeal.

Appellee suggests that "the controlling problem in this appeal is whether or not the question of proof of venue can first be raised in a collateral attack by habeas corpus." The appellee contends that its suggestion is supported by two general propositions of law—first, the question of the locus of a crime is a question of fact to be determined by the jury in the trial of the case in chief, and second, a writ of habeas corpus cannot be used as a means of reviewing the sufficiency of the evidence to establish venue.

We would agree with the appellee that as a general rule venue is a question of fact to be determined by the jury in the trial of the case in chief. (*In re Stilwell*, 135 Kan. 206, 10 P. 2d 15.) However, we have no question of fact in this case. The place or places where the various elements of the alleged offense were committed are not in dispute. There remains only to be determined, as a matter of law from the admitted facts, the proper venue for the trial of the action. Where the facts are admitted a factual question should not be submitted to the jury. (*Shrader v. McDaniel*, 106 Kan. 755, 189 Pac. 954; *Houdek v. Gloyd*, 152 Kan. 789, 107 P. 2d 751; *International Motor Rebuilding Co. v. United Motor Exchange, Inc.*, 193 Kan. 497, 501, 393 P. 2d 992.)

Where the facts are not in dispute this court has applied the rule that in the absence of the right to an appeal a commitment by a magistrate at a preliminary hearing will be reviewed by habeas corpus where venue is questioned. (*Gleason v. Comm'rs of McPherson Co.*, 30 Kan. 53, 1 Pac. 384.)

In *In re Bolman*, 131 Kan. 593, 292 Pac. 790, we stated in the syllabus:

"Habeas corpus will lie to inquire into the legality of one in custody under the order of a lower court when the question raised is the jurisdiction of the court to issue the order." (Syl. 1.)

In the opinion it was stated that "the question of jurisdiction turned on the question of venue."

It might also be suggested that in two recent cases jurisdiction was retained on appeal where the results of preliminary hearings

were challenged by habeas corpus on sufficiency of the evidence. (*In re Mortimer,* 192 Kan. 164, 386 P. 2d 261; *State v. James Earley,* 192 Kan. 167, 386 P. 2d 189.) It would appear rather unreasonable, where the facts are not in dispute, to require an accused to go to the expense and time of a trial in the district court before challenging venue as a result of the preliminary hearing.

We now reach the basic question—under the undisputed facts where was the venue of the action?

The statute which sets out the elements of the offense reads:

"A warehouseman or any officer, agent or servant of a warehouseman who issues or aids in issuing a receipt knowing that the grain for which such receipt is issued has not been actually received by such warehouseman, or is not under his actual control at the time of issuing such receipt, shall be guilty of a felony . . ." (K. S. A. 34-290.)

We have held that to issue an instrument means "to send out, to deliver, or to put into circulation." (*State v. Pierce,* 52 Kan. 521, 35 Pac. 19.)

The purpose of the *statute was to avert mischief to trade,* commerce and agriculture by discouraging the issuance of fraudulent receipts with all the attendant harmful circumstances.

There would appear to be but one overt act constituting the offense—the *issuing or aiding in the issuing of the receipt,* while knowing that the grain had not been actually received or under control.

Exhaustive research has disclosed no case touching directly on venue of the offense of unlawful issuance of warehouse receipts. There is no question here but that the issuing took place in Sedgwick County in the city of Wichita. The receipts were made out there and there endorsed and delivered. The offense could unquestionably have been prosecuted in Sedgwick County under the provisions of K. S. A. 62-401 which reads:

"Offenses committed against the laws of this state shall be punished in the county in which the offense is committed, except as may be otherwise provided by law."

The State concedes if venue exists in Reno County it must be by virtue of K. S. A. 62-404, which provides:

"When a public offense has been committed, partly in one county and partly in another, *or the act or effects constituting or requisite to the consummation of the offense occur in two or more counties,* the jurisdiction is in either county." (Emphasis supplied.)

The appellant contends that the gravamen of the offense was the

issuing of the warehouse receipts, all of which took place in Sedgwick County, and there were no acts or effect of acts constituting or requisite to the offense which occurred in Reno County.

The State contends that not having the grain in the warehouse was an act constituting an unlawful element of the offense and furthermore that the effect of the act need not be essential to the commission of the offense but it is sufficient if it is requisite to the completion of the unlawful purpose of the person committing the offense. The State also suggests that the statute is remedial and is to be liberally construed so as to effectuate the purpose to extend the lines of jurisdiction beyond the limits prescribed by the common law.

We concede that the act is remedial and would ordinarily be liberally construed. However, where such a statute is subject to constitutional restrictions the construction must keep the statute within such constitutional restrictions or the statute is void. In *State v. Knapp*, 40 Kan. 148, 19 Pac. 728, we stated:

"Again, in *The State v. Potter*, 16 Kan. 80, it was said, 'but with this provision, [Const., Bill of Rights, §10,] the defendant in a criminal action can be tried by any other jury, and out of the county and district where the offense is alleged to have been committed, only with his consent.' If the statute purporting to authorize a change of venue was intended to permit the state to change the trial against the objection of the accused, it is in conflict with the bill of rights, and therefore void." (p. 150.)

The Supreme Court of the United States announced in *United States v. Johnson*, 323 U. S. 273, 89 L. ed. 236, 65 S. Ct. 249:

". . . Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." (p. 276.)

A statute should, if reasonably possible, be so construed as to uphold its constitutionality. (*State v. Latham & York*, 190 Kan. 411, 375 P. 2d 788; *Harris v. Shanahan*, 192 Kan. 629, 390 P. 2d 772.)

Section 10 of the Bill of Rights of the Kansas Constitution provides insofar as material here:

"In all prosecutions the accused shall be allowed . . . a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. . . ."

Although the provision does not deal directly with venue, the

fact that a resident cannot be drawn out of his own county for jury service operates indirectly to make the provision a limitation on venue. The accused must be tried in the county in which the crime is committed in order to get a jury from such county. (*State v. Criqui,* 105 Kan. 716, 185 Pac. 1063.)

Most of the states have embodied in their constitutions, by the above provision or other language, the common law rule that criminal prosecutions shall be tried in the county or district in which the offense was committed and it is generally held that the constitutional provision controls legislative enactments. The rule has been recognized in Kansas.

In *State v. Bunker,* 38 Kan. 737, 17 Pac. 651, we stated the purpose of the rule as follows:

". . . The design of this constitutional provision seems to be to secure to the accused a trial by a jury from the vicinage where the crime is supposed to have been committed, so that he may have the benefit of his own good character and standing with his neighbors, if these he has preserved, and also of such knowledge as the jury may possess of the witnesses who give evidence before them. . . ." (p. 741.)

This court has also recognized the controlling effect of the constitutional provision in *State v. Kindig,* 55 Kan. 113, 39 Pac. 1028; *State v. Wade,* 55 Kan. 693, 41 Pac. 951; *In re Hedrick Appeals,* 155 Kan. 165, 123 P. 2d 806. We find the following statement by the Supreme Court of Nebraska in *Gates v. State,* 160 Neb. 722, 71 N. W. 2d 460:

" 'Venue is a jurisdictional fact and in this state the Constitution, art. I, sec. 11, and statute, Comp. St. 1929, sec. 29-1301 (now §29-1301, R. R. S. 1943), give the defendant in a criminal prosecution the right to be tried by an impartial jury in the county where the alleged offense was committed.' Robeen v. State, 144 Neb. 910, 15 N. W. 2d 69." (p. 723.)

In addition to the case cited later covering the more specific question but which also discusses this issue note *Rhoden v. State,* (Florida) 179 So. 2d 606; *Hannah v. State,* 212 Ga. 313, 92 S. E. 2d 89; *Woosley v. Commonwealth,* (Kentucky) 293 S. W. 2d 625.

The best example of the effect of the constitutional provision is to be found in the state of Michigan where the amended constitution omitted the venue provision. The Supreme Court stated in *People v. Lee,* 334 Mich. 217, 54 N. W. 2d 305:

" 'In the absence of any limitation by constitutional provision, it seems to be generally recognized that the power of a State legislature to fix the venue of criminal prosecutions in a county or district other than that in which the crime was committed is unrestricted,' 76 ALR 1035.

"The Constitution of Michigan of 1835 contained the provision in article 1, §9, 'The right of trial by jury shall remain inviolate,' and in article 1, §10, 'In all· criminal prosecutions, the accused shall have the right to a speedy and public trial by an impartial jury of the vicinage.'

"The Constitution of 1850 (art 6, §28) omitted the words 'of the vicinage' and the present Constitution, 1908 (art 2, §19), likewise does not have the words 'of the vicinage' qualifying a jury to try a criminal case. The evident purpose of leaving out of the Michigan Constitution the words 'of the vicinage' is to permit the legislature some latitude in legislating as to venue of criminal cases." (p. 225.)

If the result of our constitutional provision is to require a prosecution in the county in which the offense is committed, we then reach the very important question—When is an "offense committed" in a county?

The charge that "offenses committed against the laws of this state shall be punished in the county in which the offense is committed" as found in K. S. A. 62-401 and inferred by section 10 of the Bill of Rights is a product of the common law. Although the common law does not control either our constitution or statutes, when common law terms are used, we should look to common law definitions for their meaning.

In *State v. Criqui*, 105 Kan. 716, 719, 185 Pac. 1063, in dealing with Section 10 of the Bill of Rights, we find this statement:

"It is elementary that the constitution is to be interpreted in the light of the common law. (12 C. J. 718.)

" 'It is also a very reasonable rule that a state .constitution shall be understood and construed in the light and by the assistance of the common law, and with the fact in view that its rules are still left in force. By this we do not mean that the common law is to control the constitution, or that the latter is to be warped and perverted in its meaning in order that no inroads, or as few as possible, may be made in the system of common-law rules, but only that for its definitions we are to draw from that great fountain, and that in judging what it means we are to keep in mind that it is not the beginning of law for the state, but that it assumes the existence of a well-understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes. . . .' (Cooley Const. Lim., 7th ed., p. 94.)

"Section 10 of the bill of rights is virtually a transcript from authenticated English guaranties of personal liberty and security, and cannot be understood without understanding the common law. . . ." (p. 719.)

We get our common law from England. It dates back to the fourth year of the reign of James the First, or 1607, when the first English settlement was founded in this country at Jamestown, Virginia. The body of the laws of England as they then existed

now constitute our common law. It is so fixed by statute in this state, (G. S. 1868, Ch. 119, §3; K. S. A. 77-109.) and is generally so fixed by statute or by judicial decisions in the other states. (*Kansas Pacific Rly. Co. v. Nichols, Kennedy & Co.,* 9 Kan. 235, 252. See, also, *Clark v. Allaman,* 71 Kan. 206, 80 Pac. 571; 15A C. J. S., Common Law, §1c, p. 42.)

Under the very early common law of England where an offense consisted of a series of acts some of which were done in one county and some in another there was serious doubt by many authorities that there could be a prosecution in either county unless so much was done in one county as to constitute a complete offense. This situation was corrected as to most offenses by statute which became a part of the common law.

The first statute dealt with the crime of homicide. The act of 2 and 3 Edward VI, chapter 24, passed in 1547, read in part:

"For redress and punishment of which offense, and safeguard of man's life, be it enacted by the authority of this present parliament, That where any person or persons hereafter shall be feloniously stricken or poisoned in one county, and die of the same stroke or poisoning in another county, that then an indictment thereof founden by jurors of the county where the death shall happen, whether it shall be founden before the coroner upon the sight of such dead body, or before the justices of the peace, or other justices or commissioners which shall have authority to enquire of such offences, shall be as good and effectual in the law, as if the stroke or poisoning had been committed and done in the same county where the party shall die, or where such indictment shall be so founden; any law or usage to the contrary notwithstanding." (5 Statutes at Large, 320, 321.)

The history of the common law covering this subject was discussed at length in *State v. Criqui,* supra, in passing on the constitutionality of K. S. A. 62-410 and it was stated at page 719:

"The statute of Edward VI was in force in the fourth year of James I and, being a statute of a general nature, is regarded as a part of the common law which accompanied the colonists to this country, and became a part of our common jurisprudence. . . ."

Many subsequent enactments modified ancient common law rules as to venue with respect to the offenses to which they relate. (Encyclopaedia of the Laws of England, Vol. 14, page 474.)

By the time the constitutions of the various states were adopted it became an established rule that the English common law requirement as to venue, as modified by early statutes, was satisfied if the prosecution took place in either county where the offense occurred partly in one county or partly in another, or if the prosecution took

place in a county where the overt act or the effect of the overt act occurred.

As a result every state in the union, insofar as our research has disclosed, passed an act somewhat in line with the early common law rule and all followed with an act containing the same language as K. S. A. 62-404. This might well be called the one uniform provision. It would appear that the courts of all of the states except two, which will be discussed later, are and have been in harmony in the construction of the statute.

The provision that "When a public offense has been committed, partly in one county and partly in another, . . . the jurisdiction is in either county." has been generally construed as requiring that the offense must be divisible, and each part must be unlawful in and of itself, and committed at a different time and place, or the offense must consist of more than one act, each of which must constitute an unlawful element of the offense without the presence of which the crime would not be completed.

This statement of the law would dispose of the State's contention that failure to have wheat in the warehouse at the city of Hutchinson in Reno County was a separate and necessary element of offense placing the venue in such county. The difficulty with the State's position is that the failure to have wheat in the warehouse was not an "unlawful" element of the offense. It is not an unlawful offense not to have wheat in the warehouse at Hutchinson.

The mere existence in some county of acts or conditions of the accused, lawful in and of themselves, but necessary to be alleged and proven in order to establish the crime as charged, does not invoke the power of the above provision of the statute, so as to permit the trial of the defendant in such other county.

Next we consider the second provision of K. S. A. 62-404 which provides in effect "When . . . the act or effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." The general rule appears to be that to satisfy this provision there must be an overt act in one county and the effects of such overt act, which is necessary to complete the crime, must occur in another, i. e., homicide resulting from poison inflicted in one county with death, the effect, resulting in another.

We find no merit in the State's contention that the overt act committed in Sedgwick County had an effect in Reno County necessary to the completion of the crime. Neither do we find merit in the

State's contention that the provision should be interpreted to mean effects of acts necessary to consummate the wrongful purpose even though the effects are not necessary to complete the crime.

Although an attempt to use synonyms to construe a provision sometimes confuses rather than aids, using other words we construe the last quoted provision to mean—"an overt act or the effects of an overt act necessary to the completion of the crime charged."

It might be suggested that even though we should accept the State's construction of the statute, which we do not, we find no effects of the unlawful acts in Reno County necessary to complete the appellant's alleged unlawful purpose. The warehouse receipts were issued for the purpose of using them as security to obtain a loan. The loan was made and the money was received on the loan in Sedgwick County. The alleged wrongful purpose was completed in such county.

Approaching authority for the above statements it is interesting to note that the meaning of the language contained in K. S. A. 62-404 and similar statutes of our sister states has seldom been challenged. There are but a few cases where the courts have been called upon to give the statutes the very liberal construction requested in this case.

This court has considered the statute on a few occasions but has never found it necessary to give the language the strained construction which the State suggests here. The provisions were considered in determining venue in a prosecution for homicide (*State v. Bowen*, 16 Kan. 475); in a prosecution for buying and receiving stolen property (*State v. Rider*, 46 Kan. 332, 26 Pac. 745); in a prosecution for false swearing (*State v. Mason*, 61 Kan. 102, 58 Pac. 978); in a prosecution for embezzlement (*State v. Johnson*, 109 Kan. 239, 199 Pac. 104); in a prosecution for disposing of mortgaged property (*State v. Gorman*, 113 Kan. 740, 216 Pac. 290); in a prosecution under the worthless check act (*State v. Beam*, 175 Kan. 814, 267 P. 2d 509), and in a prosecution for forging time checks (*In re Carr*, 28 Kan. 1).

The Supreme Court of Utah made a clear statement of the rule in *State v. Graham*, 23 Utah, 278, 64 Pac. 557, where it was said:

". . . Either, first, the offense must be divisible, and each part be unlawful in and of itself and committed at a different time and place; or, second, the offense must consist of more than one act, each of which acts or effect of such acts must constitute an unlawful element of the offense, without the presence of which the offense could not be consummated.

"The mere existence, in some other county than the place of trial, of acts or conditions of the defendant, lawful in and of themselves, but necessary to be alleged and proven, in order to establish the crime as charged, do not invoke the power of this statute so as to permit the trial of the defendant in such other county." (p. 288.)

The rule was recognized in Oklahoma in *Rogers v. State,* 14 Okl. Cr. 235, 170 Pac. 269, by the following statement:

"If it be admitted that the receipt of possession of the property is to be deemed an act 'requisite to the commission of the offense,' we do not think this would sustain the position of the prosecution, for it is not every act required to consummate the offense that falls within the meaning of this section. But the limitation is 'the acts or effects thereof,' which clearly means that there must be a wrongful act done which was necessary to the commission of the offense or to accomplish its purpose in one or the other of the counties. Our constitutional provision (section 20, article 2) entitling the defendant to be tried by a jury in the county in which the crime was committed could hardly be construed to authorize a prosecution for a crime in a county where the acts and intentions of the defendant were without criminality. . . ." (p. 239.)

The language has also been considered by courts of other jurisdictions in considering venue in a prosecution for obtaining money by false pretenses (*State v. Scott,* 190 Minn. 462, 252 N. W. 225; *Carroll v. State,* [Oklahoma Criminal] 347 P. 2d 812); in a prosecution for murder (*State v. Bowling,* 243 Or. 344, 413 P. 2d 421), and in a prosecution for bookmaking on horse racing (*State v. Morano,* 134 N. J. L. 295, 47 A. 2d 419).

The state relies heavily on a quotation from 22 C. J. S., Criminal Law, §177, p. 436, where the general rule is stated as follows:

"As a general rule, accused is answerable only in the county where the crime, or some part or effect thereof, was committed or occurred, and such a statute does not apply where the crime is complete in one county. A single, indivisible offense, not consisting of several parts, is not within the operation of the statute. Before it can become operative in any criminal case, one of two things must appear: Either the offense must be divisible, and each part must be unlawful in and of itself, and committed at a different time and place, or it must consist of more than one act, each of which acts, or *the effect of each, must constitute an unlawful element of the offense,* without the presence of which the offense could not be consummated." (Emphasis supplied.)

The above quotation properly states the general rule and is helpful here, but the statement continues and it is on the continuation that the State relies. We quote:

"However, *many statutes are not so restricted* and permit venue to be laid in any county wherein the effects of the offense or any act requisite to its consummation took place, and such a statute applies although all of the essential elements of the crime are committed in one county where the intended

consequences thereof occur in another county or the effects necessary to consummate the intended unlawful purpose occur in another county." (Emphasis supplied.)

The last quoted statement is misleading. As we have previously stated, the same language is used in all of the states in this particular venue statute. If "many of the statutes are not so restricted" it is not because of the difference in the language used but it must be in the construction by the courts of the language used.

As authority for the last quotation above cases are cited only from the states of California and New York. These states are two of the few that do not have a provision in their constitutions restricting venue for criminal prosecutions. The courts of these two states have no constitutional restrictions on their interpretation of venue statutes.

Whether or not the California courts have placed an unreasonable construction upon the venue provision need not be considered here. It will suffice to say that our constitution will not permit such a construction if our statute is to be held valid.

It would also appear that if the Court of Appeals of New York ever approved of the rule as set out in the last quotation from Corpus Juris Secundum it no longer does so. In the case of *People v. Kohut*, 269 N. Y. S. 2d 350 (1965) the defendant was indicted for asking for and receiving unlawful fees in performance of his duties as commissioner of public safety and moved to dismiss indictment. The Supreme Court, Criminal Term, New York County, held that it was without jurisdiction to try defendant where agreement to take fees was made in Chicago, receipt of fees took place in Nassau County, and the only event occurring in New York County was creation of a corporation to conceal receipt of illicit funds.

In sustaining the motion to dismiss the indictment the judge stated in an opinion beginning at page 353:

"A review of the authorities on these points, however, discloses that not every act, occurrence, or effect in some way connected with the commission of a crime is jurisdictionally significant (Murtagh v. Leibowitz [1951] 303 N. Y. 311, 101 N. E. 2d 753, 30 A. L. R. 2d 1259; People v. Spivak [1924] 237 N. Y. 460, 143 N. E. 255; People v. Zimmer [1917] 220 N. Y 597, 115 N. E. 1047, aff'g 174 App. Div. 470, 160 N. Y. S. 459; People v. Steinberg [2d Dept. 1956] 2 App. Div. 2d 701, 152 N. Y. S. 2d 979; People v. Conforti [Kings Co. Ct. 1947] 72 N. Y. S. 2d 458). *For an act or effect to be accorded significance, it must be established that the alleged jurisdictional incident was 'essential in the consummation of the crime alleged in the indictment,'* (People v. Mitchell [4th Dept. 1900] 49 App. Div. 531, 535, 63 N. Y. S. 522, 524, aff'd 168 N. Y. 604, 61 N. E. 182), or constituted 'one or more of [the] substantive and

material parts' of the crime (People v. Nicoll [1956, 4th Department] 3 App. Div. 2d 64, 69, 158 N. Y. S. 2d 279, 286). . . . In view of the fact that the Court of Appeals in Murtagh v. Leibowitz, supra, reversed the order of the Appellate Division denying a writ of prohibition, the opinion of the dissenters in the latter court (Johnston and MacCrate, JJ.) takes on particular significance (Applicat'n of Murtagh [2d Dept. 1951] 278 App. Div. 512, 105 N. Y. S. 2d 752). On the point in question, Justice Johnston wrote (at p. 515, 105 N. Y. S. 2d at page 755): 'In my opinion, to come within section 134 of the Code, *the act in question must be requisite to the consummation of the offense defined in the statute.* People v. Mitchell, 168 N. Y. 604, 607-608, 61 N. E. 182, 183-184. *If the act is not part of the offense defined in the statute, it is not "requisite to the consummation of the offense,"* even though it may be an incident . . . of the crime charged.' (Emphasis added.)" (Emphasis supplied.)

. The Appellate Division of the Supreme Court reversed the lower court and denied the motion to dismiss the indictment. (*People v. Kohut,* 25 A. D. 10.)

The Court of Appeals reversed the Appellate Division approving the action of the trial court with this simple statement:

"Order reversed and indictment dismissed. The crime charged in the indictment (taking unlawful fees, Penal Law, Consol. Laws, c. 40, § 1826) was committed, if at all, in Nassau County (cf. Matter of Murtagh v. Leibowitz, 303 N. Y. 311, 316-317, 101 N. E. 2d 753, 754-755, 30 A. L. R. 2d 1259). Section 134 of the Code of Criminal Procedure is inapplicable." (*People v. Kohut,* 269 N. Y. S. 2d 715, 716.)

The court of last resort for the state of New York appears to have placed its approval on the general rule that for an act or effect to be accorded significance, it must be established that the alleged jurisdictional incident was essential in the consummation of the crime alleged in the indictment.

We are forced to conclude that there was no act or the effect of an act essential to the consummation of the crime charged which took place in Reno County and the venue for the prosecution of the crime charged does not lie in such county.

There is some division of authority as to whether venue is a jurisdictional or a procedural matter. The division of authority does not require an academic discussion of terms. In *State v. Fields,* 182 Kan. 180, 318 P. 2d 1018, this court stated:

"Under the provisions of G. S. 1949, 62-401 the venue of an offense is jurisdictional and it must be proved to establish the jurisdiction of the court (*Hagan v. The State,* 4 Kan. 75 [2d Ed.].) . . ." (See, also, *State v. Williams,* 122 Mont. 279, 202 P. 2d 245; *Anderson v. Commonwealth,* (Kentucky) 349 S. W. 2d 826.)

It will also be noted that the Kansas legislature used the word "jurisdiction" in fixing the locale for prosecution of public offenses. (K. S. A. 62-404 to 408 and 62-410.)

We must conclude the prosecution of an accused, over his objection, in a local jurisdiction other than that fixed by the legislature is void.

We must also conclude that a justice of the peace has no jurisdiction to hold preliminary hearings on offenses committed in counties other than the one in which he was elected. The jurisdiction of justices of the peace is fixed by K. S. A. 62-201 by the following language:

"The following magistrates shall have power to cause to be kept all laws made for the preservation of the public peace, and, in the execution of that power, to require persons to give security to keep the peace, in the manner provided in this article:   .  .  .  justices of the peace, in their respective counties;  .  .  ."

We also consider K. S. A. 62-604 which provides for proceedings where the offender has fled from the county where the offense was committed:

"Upon complaint made to any magistrate of any county in this state that a criminal offense has been committed, and that the offender has fled from the county in which the offense was committed, such magistrate shall issue a warrant, directed to an officer of his own county or of the county in which the offense was committed, requiring the offender to be apprehended and taken before some magistrate of the county where the offense was committed, to be dealt with according to law."

It will be noted that even a fleeing offender must be taken before a "magistrate of the county where the offense was committed."

It appears that the State suggested to the court below that if it found the venue was not in Reno County it should apply K. S. A. 62-1442 which provides:

"When it appears at any time before verdict or judgment that the defendant is prosecuted in a county not having jurisdiction, the court may order the venue of the indictment or information to be corrected, and direct that all the papers and proceedings be certified to the proper court of the proper county, and recognize the defendant and witnesses to appear at such court on the first day of the next term thereof, and the prosecution shall proceed in the latter court in the same manner as if it had been there commenced."

The statute is not applicable here. The statute anticipates at least a partial trial in the district court. Here the district court had not yet obtained jurisdiction. Prosecutions can take place in the district court only by indictment or information. There has been no infor-

mation filed. There was no information to correct. The prosecution had not reached the stage where the statute became applicable.

We are constrained to hold that the magistrate was without venue jurisdiction to hold the preliminary hearing and commit the accused.

The judgment is reversed with directions to the district court to discharge the petitioner.

· APPROVED BY THE COURT.

FROMME, J., dissenting: I disagree with the reasoning set forth and with the result reached by the majority opinion, and will summarize herein the basis upon which I would affirm the order of the district court denying the writ of habeas corpus.

The majority opinion seems to overlook or disregard the fact that no public offense under the statute (K. S. A. 34-290) is possible unless a warehouseman is operating a licensed warehouse at a set location.

· In addition the result of the majority opinion will be to restrict unduly the venue provisions of K. S. A. 62-404 relating to crimes committed in two or more counties.

In *The State v. Johnson*, 109 Kan. 239, 199 Pac. 104, it was held the act of a corporate officer in drawing a check on funds of the corporation located in a bank in a distant county constituted the crime of embezzlement by the officer. The court indicated the funds in the bank were legally in his possession and control as the managing officer of the corporation. Prosecution was held proper in the county where the bank was located although withdrawal was by mail and defendant was never present in the county.

This same reasoning is applicable to the facts of the present crime charged. The defendant, William H. Addington, was president of Addington Grain Company, Inc., a corporation. The corporation was operating a licensed grain warehouse at Hutchinson, Reno county, Kansas. The corporation was the warehouseman and could operate only by its officers, agents and employees. The physical plant at Hutchinson was run by employees but the defendant, as president, was operating the warehouse at all times and should be considered in possession and control thereof at all times. Such control and possession would extend to any wheat or grain received in the warehouse.

1 *Wharton's Criminal Law and Procedure,* Definition of Crime §10, p. 11, defines a crime as follows:

"A crime is the commission or omission by a person having capacity, of any act which is either prohibited or compelled by law, and the commission or omission of which is punishable by a proceeding brought in the name of the government whose law has been violated. . . ."

The statute (K. S. A. 34-290) requires two indivisible acts to constitute the complete crime with which defendant is charged. Both acts must be proven before the defendant can be guilty of the offense. The first is an act of commission, *i. e.,* the issuance of a grain warehouse receipt. The second is an act of omission, *i. e.,* failure to have received the grain for which the receipt is issued. Neither act is an unlawful act in and of itself. The receipt may be issued in any county. Under the agreed facts of this case the issuance was in Sedgwick county. The second of these acts necessary to consummate the offense must take place at the particular warehouse *being operated* by the warehouseman. Under the facts of this case the warehouse was in Reno county.

Therefore the act of omission in the present case took place, if at all, in Reno county. The warehouse receipt was issued for specific grain. If properly issued and endorsed the effect would be to transfer title to grain in the Addington Grain Company, Inc. elevator located in Reno county. If the specific grain had not been received the effect would be a failure to transfer title to specified grain at the elevator. It should be noted the warehouseman is required to designate on every warehouse receipt the location of the warehouse, the amount of grain, the date this grain was received by the warehouseman, the grade, test weight, protein content and the method of transportation (railroad in the present case) by which he received the same.

The defendant, being president of the corporate warehouse located at Hutchinson in Reno county, was in possession and control of the warehouse and of any grain received at that location. This constructive possession by defendant is sufficient to support venue under K. S. A. 62-404 because non-receipt of the particular shipment of grain for which the receipt was issued is one of the two indivisible parts constituting the offense under the statute.

The majority opinion treats the offense as consisting of two divisible acts and indicates the issuance of the warehouse receipt was unlawful but the failure to have received the grain for which the

receipt was issued was lawful. With this I cannot agree. The issuance of the warehouse receipt is not unlawful unless it is coupled with a failure of the warehouseman to receive the specific grain for which the receipt was issued. The two parts of the crime are indivisible. Each constitutes an unlawful element of the offense without which the crime would not be consummated.

An indivisible part of the offense having been committed in Reno county the provisions of K. S. A. 62-404, relating to proper venue, do not violate Section 10 of the Bill of Rights of the Kansas Constitution which requires the prosecution to be in the county where the crime was committed.

I would affirm the order of the lower court denying the writ.

SCHROEDER, J., joins in the foregoing dissent.